# POTTER *v.* TONE.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

Where an invention consists of a composition of matter containing principally silicon and oxygen, tests showing that its product is a nonconductor of electricity, and acts as a reducing agent in many chemical reactions, constitute a reduction to practice, as they show a utility sufficient to support a patent. It is not necesary that they should

show that the invention is capable of use in some commercial process, and that such process has been successfully practised.

No. 666.   Patent Appeals.   Submitted November 11, 1910.   Decided January 3, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.         *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles A. Terry* for the appellant.

*Mr. C. P. Byrnes* and *Mr. G. H. Parmelee* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents, awarding priority to Frank J. Tone in an interference proceeding relating to the invention of a production of silicon monoxid. It is described by the Commissioner as a "composition of matter containing principally silicon and oxygen, and may be a brown, amorphous, vitreous solid, or a very fine brown powder."

The issue is in the twelve following counts:

1. The within described product, being silicon monoxid SIO.

2. A physically homogeneous, light brown material composed essentially of silicon and oxygen in about the ratio of their atomic weights.

3. A material consisting of silicon and oxygen in which these elements are present in the ratio of one atom of silicon to one atom of oxygen.

4. A material containing silicon combined only with oxygen, the oxygen being less than is contained in silicon dioxid.

5. A compound of silicon and oxygen having the approximate specific gravity 2.24, and containing less weight of oxygen than of silicon.

6. A compound of silicon and oxygen only, which can be further oxidized.

7. A compound of silicon and oxygen having approximately the same specific gravity as the amorphous dioxid, but containing but half as much oxygen.

8. The within-described material containing silicon monoxid characterized by the extreme fineness of particle produced by sublimation into an inert environment.

9. A compound of silicon and oxygen, which, when pure, has a soft brown color.

10. A pulverulent compound containing monoxid of silicon and being characterized by a soft brown color.

11. The herein-described new condensation product from the gases produced by electrically heating a mixture of carbon and silica, said product consisting substantially of silicon and oxygen, and having a specific gravity of approximately 2.22.

12. The herein-described new product condensed from the gases produced by electrically heating a mixture of carbon and silica, and consisting substantially of silicon and oxygen, in the proportions of 63 parts silicon to 37 parts oxygen, in the form of a brown substance, which, by treatment with hydrofluoric acid, yields a residue of amorphous silicon.

Henry N. Potter is the senior party, having filed December 30, 1904, while Tone did not enter the office until January 18th, 1907.

To establish priority over Potter it was incumbent upon Tone to prove an earlier conception, as well as reduction to practice; or, instead of the latter, that he was exercising diligence when Potter entered the field. He submitted testimony in support of his contentions. Potter took no testimony, relying upon his filing date for conception and reduction to practice.

The Examiner of Interferences found that Tone was the first to conceive, but denied him reduction to practice, or diligence therein, and awarded priority to Potter.

On appeal, the Examiners-in-Chief reversed that decision,

and on further appeal by Potter to the Commissioner, their decision was affirmed.

It is not seriously questioned that Tone discovered the new composition several years before Potter's filing date, and the case turns upon his claim of reduction to practice. Without reviewing the testimony at length, it is sufficient to say that it shows that after Tone's discovery of the composition, several expert chemists and metallurgists were put to work to investigate its properties and uses. One of these reported, and the fact was testified to by him, that the brown vitreous product was a nonconductor of electricity, and acted as a reducing agent in many chemical reactions. This report was confirmed by another expert of December 28th, 1904.

Without undertaking to determine whether the discovery of a new chemical compound without a further discovery of useful properties is sufficient as a reduction to practice, because it is not necessary, under the facts of this case, we concur in the following expression of the opinion of the Examiners-in-Chief, which was quoted and approved by the Commissioner:

"In order to be patentable, an invention must possess utility; and it may be noted that prior to the declaration of this interference it was determined that the specification of the Tone application described a patentable invention; yet all that is stated therein in regard to its utility is that it is a nonconductor of electricity, that it is a reducing agent, and can be used in operations where silicon and aluminum are now employed.

"All these facts are found in both the Thebaud and the Mott reports, or are deducible therefrom. If they show ultility sufficient to support a patent, they would seem to be sufficient to demonstrate utility when ascertained by actual test, and if the material was produced, its physical and chemical characteristics determined so as to identify it; if it was known how it could be produced at will, and some utility had been demonstrated, the invention would seem to have been reduced to practice. To hold that it must be shown to be capable of use in some commercial process, and that process must have been successfully

practised, would seem to amount to holding that the inventor must make a second invention, which might be the subject of another patent, and reduce that to practice before he could claim a reduction to practice of the original invention. The issues in this interference do not cover the use of the material in question for any specific purpose, but the production of a novel material of described characteristics, which characteristics may suggest many uses to subsequent inventors. Its value for educational purposes in demonstrating to chemists the character and properties of 'the long-sought silicon monoxid;' its use as a reducing agent in chemical reactions, and the fact that it is a nonconductor of electricity,—are sufficient to assist in promoting the progress of the useful arts and to establish the utility of the invention. These facts were established by Tone at the date of the Thebaud report, April 26th, 1904, and of the Mott report, December 28, 1904, both of which are prior to Potter's filing date, December 30th, 1904."

Such apparent usefulness of the newly discovered compound being shown, nothing more was requisite. If additional uses may hereafter be discovered, rendering it of additional value commercially, Tone will be entitled to their benefit.

This conclusion renders consideration of the question of diligence unnecessary.

We find nothing in the facts to justify a conclusion that the invention was concealed and suppressed by Tone, so as to deprive him of its benefit as against a rival inventor.

The decision will be affirmed, and this decision certified to the Commissioner of Patents.                *Affirmed.*