37 C.C.P.A. (Patents)

**Application of BREMNER et al.**

**Patent Appeal No. 5638.**

United States Court of Customs and
Patent Appeals.

May 9, 1950.

Cushman, Darby & Cushman, Washington, D. C. (William M. Cushman, Max C. Louis, Carroll F. Palmer, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the final rejection of all the claims of appellants' application for patent, serial number 483,338.

The claims are numbered 1, 3, 4, 5, 6, 9, 10, and 12 to 25, inclusive.

Claim 21 is the only product claim. It reads: "21. As a new composition of matter, polydihydropyran."

It was quoted by the board as representative.

Claim No. 1 reads: "1. A process for the production of polymers of dihydropyran which comprises treating dihydropyran in the liquid phase and under substantially anhydrous conditions with a Friedel-Crafts catalyst."

Claims 22, 23, 24, and 25 were held to be for nonelected species.

The disclosure of the application relates to methods of polymerizing dihydropyran. At the outset the specification states: "According to the present invention polymers of dihydropyran are produced by treating dihydropyran in the liquid phase and under substantially anhydrous conditions, with a Friedel-Crafts type catalyst."

In the statement of the Primary Examiner, following the appeal to the board, there is an epitomization of the disclosures of appellants' specification reading: "(4) Applicants disclose a process of polymerizing dihydropyran in the presence of certain Friedel-Crafts catalysts. The polymers are described on page 3, lines 13–19 as varying from viscous liquids to hard brittled solids. Example 1 describes the production of a golden colored viscous liquid. Example 2 produces a hard resinuous polymer. Example 3 produces an almost colorless resin melting at 84.50°C. Example 4 produces a

resin melting at 95°C. Example 5 produces a resin melting at 60°C. and in example 6 is described a process of producing several different resins, one melting at 91°C. and the rest melting above 200°C."

The board's finding reads: "The appellants disclose specifically six different products, five of which are resins and the other a viscous liquid. There is no disclosure of the conversion of the specific liquid into a resin. The resins melt at various temperatures and one of them is referred to as a hard resin."

In the brief for appellants before us it is said, in substance, that the tribunals of the Patent Office did not question the production of a new chemical polymer by the process disclosed by appellants, and that those tribunals did not question the identification of such polymer.

The statement so made in the brief for appellants is accurate, but the matters suggested as not being questioned by the tribunals of the Patent Office were not considered by those tribunals on their *per se* patentable merits, because they held that no use for the products claimed to be developed by the processes had been shown in the specification.

 So, as stated in substance in the brief of the Solicitor for the Patent Office, the questions which require determination here are (1) whether it is necessary that the utility of an alleged invention be disclosed in the application, and, if so, (2) whether a disclosure of utility is made in the instant case.

In the form stated determination of the first question is not free from difficulty, because the degree or extent of any claimed utility might be doubted by a Primary Examiner, and study might be devoted to the question of utility to the exclusion of other questions.

It is our view that no "hard and fast" ruling properly may be made fixing the extent of the disclosure of utility necessary in an application, but we feel certain that *the law requires that there be in the application an assertion of utility and an indication of the use or uses intended.*

It was never intended that a patent be granted upon a product, or a process producing a product, unless such product be useful. See subsection 8 of section 8 of Article I, United States Constitution; R.S. 4886, 35 U.S.C. 31, 35 U.S.C.A. § 31; R.S. 4888, 35 U.S.C. 33, 35 U.S.C.A. § 33; also decisions in Potter v. Tone, 1911 C.D. 295, 36 App.D.C. 181; Scovill Mfg. Co. v. Satler, D.C., 21 F.2d 630; Smokador Mfg. Co., Inc. v. Tubular Products Co., 2 Cir., 31 F.2d 255; and In re Holmes, 63 F.2d 642, 20 C.C.P.A., Patents, 899.

Upon the facts appearing, it is not difficult to determine the second question, that is, whether a disclosure of utility is made in the instant case.

There is nothing in the application which asserts utility nor anything indicating what use of the product may be made.

The decision of the board is affirmed.

Affirmed.