**PETROCARBON LIMITED, Appellant,**

v.

**Robert C. WATSON, Commissioner of Patents, Appellee.**

No. 13675.

United States Court of Appeals District of Columbia Circuit.

Argued May 16, 1957.

Decided July 3, 1957.

Petition for Rehearing Denied Oct. 9, 1957.

Mr. Ralph H. Hudson, Washington, D. C., for appellant.

Mr. Arthur H. Behrens, Atty., U. S. Patent Office, with whom Mr. Clarence W. Moore, Sol., U. S. Patent Office, was on the brief, for appellee.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a patent case, in which the Patent Office rejected an application on the ground that it did not meet the requirement of 35 U.S.C. § 112 (1952) that it contain "a written description of the invention, and of the manner and process of making and *using* it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains * * * to make and *use* the same." (Emphasis added.) Plaintiff-appellant, as assignee, brought suit in the District Court under 35 U. S.C. § 145 (1952). After hearing, the District Court dismissed the complaint. This appeal followed.

The application claimed an invention consisting of a process for the production of "new and useful polymers." Various processes were described, using different chemical vapors. The specification said, in part:

"Polymerization takes place spontaneously on condensation of the monomer vapour by cooling. The cooling may take place in contact with a cool surface on which the polymer is deposited in the form of a film."

Several examples were given in the application "of processes for the production of new polymers in accordance with the invention." The first example given concludes by saying:

"The vapours leaving the tube were passed into a trap in which they were cooled to 0° C in contact with a cold surface on which the polymerised product was deposited in the form of a white occasionally transparent film."

Example 4 reads as follows:

"1.4 dimethyl naphthalene vapour at a pressure of about 10 mm.Hg. was passed through a tube heated to 860° C at such a rate that the vapour was subjected to this temperature for from 0.3 to 0.4 seconds. The vapours leaving the tube were passed through a trap in which they were cooled to room temperature. The polymerised product was deposited in the trap in the form of a white film."

The application then went on to say:

"All the polymers obtained in the above examples were useful because they had great thermal stability and did not soften when heated to a temperature of 270° C. They were not attacked by sulphuric acid at 150° C. They were insoluble in, and also did not swell visibly in, boiling

> ethyl alcohol
> diethylether
> chloroform
> xylenes
> benzene
> toluene
> glacial acetic acid."

Plaintiff-appellant argues that the quoted matter amounted to a sufficient disclosure of the utility of the claimed invention within the rule of In re Bremner, 1950, 182 F.2d 216, 217, 37 C.C.P.A., Patents, 1032, 1034, namely, that *"there be in the application an assertion of utility and an indication of the use or uses intended."* (Emphasis in original.) Plaintiff urges on brief that "the description [in the application] of how to make a film, plus mention of its acid resistance and similar attributes, cannot fail to suggest or indicate to those skilled in the art that the film *ought* to be useful, for example, as a protective film or coating." In the District Court plaintiff offered not only a number of tangible exhibits, showing objects protectively coated by the new polymers, but also the testimony of expert witnesses "to explain what the term film meant, and to show this exhibit is made in conformity

with the specification, and that they did actually protect, and were functional." The District Court excluded the proffered testimony. In this court the Patent Office in effect concedes that the proffered exhibits and testimony would show that the new polymers do adhere to certain surfaces and protect them against certain acids and other substances.

■ While the case is a difficult one, we have concluded that we must affirm the judgment of the District Court. Although the specification does say that the "polymers obtained in the above examples were useful" because they had great thermal stability and resisted various fluids, it is not apparent from the face of the specification how utility could in fact be achieved. The examples indicate that the polymer forms a "film"; but they do not indicate whether or not this film adheres to the object on which it forms, whether it falls off in the form of a powder, whether it is detachable in the form of a film-like substance (similar perhaps to cellophane), whether the film of polymer is useful as such, whether it would have to be subjected to further processing before it could form a useful object or fluid, and so on. Some such further indication, it seems to us, should have been given to enable readers of the application to understand how the product is to be used. If the specification had indicated a particular use for the *film*, and if the question before us was whether the language used was sufficient to explain this use to one skilled in the art, then testimony of experts might well have been received. But the present specification, while indicating useful properties of the new polymers (heat and acid resistance), makes no such statement as to the film, or explains how the film is to be used. Since the word "film" by itself does not connote a particular use, the specification is defective as a matter of law.

■ Under these circumstances, it was not possible for the plaintiff to remedy the defects in its specification by offering testimony in its *de novo* action

in the District Court that in fact the film adhered to objects suspended in vapor; that it was a solid and durable film; and that it was useful as a permanent protective coating. The District Court did not err in excluding the proffered testimony.

For these reasons the judgment of the District Court will be

Affirmed.

BURGER, Circuit Judge (dissenting).

I dissent because I think it is unsound to say that as a matter of law "the word 'film' by itself does not connote a particular use * * *."

The statute [1] requires a description of utility which is sufficient "to enable any person skilled in the art to which it pertains * * * to * * * use the same * * *." Appellant offered to prove by expert testimony, i. e., "persons skilled in the art" that they understood what the term meant; in other words, that as used in the specification the term disclosed an obvious use and utility, especially when considered in light of the chemical properties ascribed to the substance by the specification. The District Court should have permitted appellant an opportunity to make good on this offer of proof and then evaluated the testimony before deciding the case.

[1]. 35 U.S.C. § 112 (1952).