50 CCPA
**Application of Michael Mojzesz SZWARC.**

**Patent Appeal Nos. 6462, 7000.**

United States Court of Customs and Patent Appeals.

June 28, 1963.

Rehearing Denied Sept. 27, 1963.

See also 280 F.2d 436, 47 CCPA 1167.

278

Cruzan Alexander, St. Paul, Minn. (James D. Stice, St. Paul, Minn., of counsel) for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellant has appealed the rejection of 3 product and 8 process claims in his application [1] for patent on certain polymers and processes for the production thereof. The rejection is based on appellant's British Patent which issued more than one year prior to the filing date of the appealed application. 35 U.S.C. § 102(b). The primary issue in this case arises under 35 U.S.C. § 120 and requires a determination of whether the present application is entitled to the benefit of the fil-

1. Ser. No. 306,940, filed August 28, 1952.

ing date of an earlier U.S. application [2] for patent filed by appellant, the filing date of which is early enough to avoid the statutory bar of 35 U.S.C. § 102(b).

*History of Present Proceedings*

The rather complicated fact situation presented by the two consolidated appeals may be summarized as follows:

"1. Appellant, Szwarc, on Sept. 19, 1947, filed a British application which relates to the same subject matter as the presently appealed application.

"2. A U.S. application, Ser. No. 48,339, identical with said British application, was filed on Sept. 8, 1948. (Hereafter termed the "parent" application).

"3. On Mar. 7, 1951 the reference British patent, No. 650,947, was issued on the said British application.

"4. The present application, Ser. No. 306,940, was filed on Aug. 28, 1952, as a 'continuation-in-part' of what appellant asserts to be his parent application, Ser. No. 48,339.

"5. Claims 42–47, 49, 50 and 52 of the 'parent' U.S. application, Ser. No. 48,339, were finally rejected by the examiner as 'lacking utility'. These claims were amended after final rejection in accordance with Rule 116 of the Rules of Practice of the U.S. Patent Office and became claims 54 (a process claim) and 55 (a product claim) which were appealed to the Board of Appeals.

"6. The Board of Appeals, relying upon our decision in In re Bremner, et al., 182 F.2d 216, 37 CCPA 1032, affirmed the examiner's rejection of claims 54 and 55 of the 'parent' application.

"7. After the Board had affirmed the examiner's rejection of said claims 54 and 55, a civil action against the Commissioner under 35 U.S.C. § 145 was filed by Petrocarbon Ltd., the then assignee of appellant Szwarc. The District Court, D. C., in an unreported Memorandum Decision, ruled in favor of the Patent Office, Petrocarbon Ltd. v. Watson.

"8. The District Court's decision in Petrocarbon Ltd. v. Watson was affirmed by the Court of Appeals, D. C., 101 U.S.App. D.C. 214, 247 F.2d 800. (Certiorari denied, 355 U.S. 955, 78 S.Ct. 540, 2 L.Ed.2d 531; Petition for rehearing denied, 356 U.S. 978, 78 S.Ct. 1134, 2 L. Ed.2d 1146).

"9. The claims of the present application stand rejected under 35 U.S.C. § 102(b) as being barred by the said British Patent 650,947 issued to Szwarc more than a year prior to Aug. 28, 1952, the filing date of the presently appealed application. Benefit of the filing date of the 'parent' application under 35 U.S.C. § 120 was denied by the examiner, which action was affirmed by the Board of Appeals. In a decision upon reconsideration, the board held the decision in Petrocarbon Ltd. v. Watson to be *res judicata* on the question of whether the parent application disclosed the invention as required by the first paragraph of 35 U.S.C. § 112, and held that this prevented appellant from avoiding the present rejection by recourse to 35 U.S. C. § 120.

"10. In our initial consideration of this case, in Appeal No. PA

2. Ser. No. 48,339, filed September 8, 1948.

6462, we noted that while the appealed decision was based on *res judicata*, the record did not disclose the necessary identity or privity of parties between the present appellant Szwarc and Petrocarbon Ltd., the party in interest in the prior litigation. We therefore remanded the case to the Patent Office 'for a factual determination as to the relationship, if any, between the parties involved in the Petrocarbon case and the party in interest here involved'. In re Szwarc, 280 F.2d 436, 47 CCPA 1167.

"11. The Board of Appeals, in a decision dated Oct. 13, 1961, set forth facts of record in the Patent Office which it found sufficient to show identity or privity of the parties Szwarc and Petrocarbon Ltd. and denied appellant's requested remand to the primary examiner. Szwarc's Request for Reconsideration and his Petition to the Commissioner were both denied.

"12. The board decision dated Oct. 13, 1961 was appealed and became our Appeal No. PA 7000. We granted Szwarc's Petition for Rehearing in PA 6462 and both appeals were consolidated for reargument and decision."

3. The record before us presents on its face an incomplete chain of title between the M. W. Kellogg Co., and Petrocarbon Ltd., the party plaintiff in the Petrocarbon case. The party in interest here, as shown by the "statement of facts shown by the record in the Patent Office", is the assignee of a third party, Petrocarbon Developments, Limited of London, England, whose title was acquired from a "liquidator" of Petrocarbon Limited who appears to have been the party in interest before the court in the Petrocarbon case. There is, therefore, no evidence before this court from which we can determine factually whether there is such privity between M. W. Kellogg Company and Petrocarbon

## PA 6462

The issue presented by PA 6462 is whether under 35 U.S.C. § 120 the present application is entitled to the benefit of the filing date of appellant's earlier U.S. application. It is the position of the board and solicitor that the decision in Petrocarbon Ltd. v. Watson, supra, is *res judicata* on this issue.

### The Parties

██ The first requirement of *res judicata* is that the second suit must involve the same parties or their privies. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. In the case at bar, we obviously do not have *the same parties* as those before the court in Petrocarbon Ltd. v. Watson, supra. Since the record in PA 6462 was silent as to any relationship establishing privity between the parties, we remanded the same to the board for a factual determination of the relationship upon which the finding of *res judicata* could properly be based. In re Szwarc, 280 F.2d 436, 47 CCPA 1167. While there still remains some doubt as to whether the information presented by the Board of Appeals on Remand sufficiently establishes privity of the parties,[3] Petrocarbon Ltd. and Szwarc, which warrants application of *res judicata*, we need not here pass on this matter in view of the concession made at oral argument by appellant's attorney that the M. W. Kellogg Company was the party in interest in Petrocarbon Ltd. v. Watson, supra, and is the party in interest here.

Limited, as to warrant the application of *res judicata*. However, we will not attempt to reconcile these facts with the admission made by appellant's counsel. We are mindful, however, of the admonition in Russell v. Place, 94 U.S. 606, 610, 24 L.Ed. 214, "[I]f upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence." However, we take the admission of appellant's counsel to be based on facts not of record before us and as such to remove the element of conjecture from the case.

*The Issues*

 The second requirement of *res judicata* is identity of issues. If the second action between the same parties or privies is upon the same claim or demand, the judgment in the prior action operates as an absolute bar to relitigation not only of those matters actually determined in the prior suit but also any other matter which might have been acted upon in the prior suit. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. This aspect of the doctrine of *res judicata,* sometimes called *res judicata* by bar or merger, differs from the second aspect of *res judicata,* estoppel by judgment. If the second action is upon a different claim or demand, an estoppel by judgment, more limited in its scope than *res judicata* by bar, operates as an estoppel only as to those matters upon which a determination or final verdict was actually rendered. Cromwell v. County of Sac, supra. Because the distinction between *res judicata* by bar and estoppel by judgment is often a source of confusion, the definitive statements of the Supreme Court in Commissioner v. Sunnen, supra, 333 U.S. at pages 597–598, 68 S.Ct. at page 719 are here quoted at some length:

"It is first necessary to understand something of the recognized meaning and scope of *res judicata,* a doctrine judicial in origin. The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' * * *

"But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac, supra, [94 U.S.] 353. And see Russell v. Place, 94 U.S. 606 [24 L.Ed. 214]; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48 [18 S. Ct. 18, 42 L.Ed. 355]; Mercoid Corp. v. Mid-Continent [Inv.] Co., 320 U.S. 661, 671 [64 S.Ct. 268, 88 L.Ed. 376]. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. * * * *"

Having in mind the above stated distinctions between *res judicata* by bar and estoppel by judgment or collateral estoppel and applying it to the present case, we find that the present record presents a different cause or demand than the cause or demand litigated in the Petrocarbon case.

 As stated in the Memorandum Decision of the District Court in the Petrocarbon case, "The sole issue is whether the specification meets the requirements of Section 112 of Title 35 for a written description of the manner of using the invention." The "invention" in the above quoted statement is the invention defined

in claims 54 and 55 of the parent application, No. 48,339.

Stated another way, the "cause or demand" presented for adjudication in Petrocarbon was whether the applicant was entitled in the application there in issue to the allowance of claims 54 and 55. In the present appeal, PA 6462, this issue is not before us. The sole issue here is whether the present application is entitled under 35 U.S.C. § 120 to the benefit of the filing date of the parent application. The "cause or demand" presented here is whether the eleven appealed claims [4] of the present application should be allowed. The issue, cause or demand of the present case thus is not the same issue, cause or demand which was litigated in the Petrocarbon case. See In re Fried, 312 F.2d 930, 50 CCPA 954. Therefore, we hold that res judicata by bar does not apply. We must therefore determine here whether the second aspect of res judicata, estoppel by judgment or collateral estoppel, is applicable.

Where, as here, the second action between the same parties is upon a different cause or demand, the judgment in the prior action operates as an estoppel only to those matters in issue upon which a determination or verdict was rendered. Cromwell v. County of Sac, supra. The determination of precisely what matters were actually decided in the Petrocarbon case gives real meaning to the observation of the Supreme Court in Last Chance Mining Company v. Tyler Mining Company, 157 U.S. 683, 687, 15 S.Ct. 733, 734, 39 L.Ed. 859, that:

"* * * The law in respect to estoppel by judgment is well settled, and the only difficulty lies in the application of the law to the facts. * * *

 The specific issue under 35 U.S.C. § 120 which requires decision in this appeal is whether the invention claimed in the present appealed claims is "* * * disclosed in the manner provided by the first paragraph of Section 112 of this title in an application previously filed in the United States by the same inventor

* * *" so as to allow the present application to have the benefit of the filing date of the previously filed parent application which was the application in issue in the Petrocarbon case. It is the position of the Board of Appeals and the solicitor here that this question must be answered in the negative because the Petrocarbon case finally determined that the invention claimed therein was not "disclosed in the manner provided by the first paragraph of Section 112."

As we recently held in the case of In re Fried, supra, the position of the Patent Office requires us to determine, by comparing the appealed claims and the claims rejected in the parent case, whether "the invention" of the appealed claims is the same or is different from "the invention" in the prior rejected claims. Only after such a comparison can it be decided if estoppel by judgment or collateral estoppel prevents us from making a determination of whether, under 35 U.S.C. § 120, the appealed claims are entitled to the benefit of the filing date of the earlier filed parent application. As pointed out in In re Fried, supra, the summary application of collateral estoppel, without such an analysis and comparison, can lead to the improper denial to an applicant of the benefit of an earlier filing date under 35 U.S.C. § 120.

Claim 54 rejected in the parent case was a process claim while claim 55 was a product claim for "The solid polymer produced by the process of claim 54." Of the eleven claims in the present application on appeal, claims 36, 38 and 39 are product claims of varying scope and the remainder are process claims.

The product of claim 55 is produced by the process of claim 54 which is as follows:

"54. A process for the production of a solid polymer of high thermal stability which is resistant to sulfuric acid and insoluble in many organic solvents, which comprises heating hydrocarbon vapors consisting essentially of paraxylene at a temper-

4. Claims 1–3, 5, 6, 9, 13, 14, 36, 38 and 39.

ature of about 860° C for a period of from about 0.3 to 0.4 second and under a pressure of from about 8 to 10 mm. of mercury, cooling the resulting vapors to a temperature at which a solid polymer is deposited which does not soften even when heated to about 270° C, and recovering the said solid polymer."

The District Court, in its Memorandum Decision,[5] made no distinction between the process and the product claims but merely stated that the sole issue was whether the specification meets the requirements of 35 U.S.C. § 112. In finding that claims 54 and 55 were properly rejected, Judge McGuire quoted from In re Bremner et al., 182 F.2d 216, 37 CCPA 1032, upon which the board had relied. In the decision in the Court of Appeals, D. C., 101 U.S.App.D.C. 214, 247 F.2d 800, appellant took the position that the specification did in fact meet the requirements of 35 U.S.C. § 112 within the "rule of In re Bremner" because the application stated how to make a film from the solid polymers and mentioned its thermal stability and resistance to various solvents of the polymers. In rejecting the appellant's argument that the word "film" itself was a sufficient indication to a person of ordinary skill in the art of how to use the invention, the court stated:

" * * * Although the specification does say that the 'polymers obtain-ed in the above examples were useful' because they had great thermal stability and resisted various fluids, it is not apparent from the face of the specification how utility could in fact be achieved. The examples indicate that the polymer forms a 'film'; but they do not indicate whether or not this film adheres to the object on which it forms, whether it falls off in the form of a powder, whether it is detachable in the form of a film-like substance (similar perhaps to cellophane), whether the film of polymer is useful as such, whether it would have to be subjected to further processing before it could form a useful object or fluid, and so on. Some such further indication, it seems to us, should have been given to enable readers of the application to understand how the product is to be used. If the specification had indicated a particular use for the *film*, and if the question before us was whether the language used was sufficient to explain this use to one skilled in the art, then testimony of experts might well have been received. But the present specification, while indicating useful properties of the new polymers (heat and acid resistance), makes no such statement as to the film, or explains how the film is to be used. Since the word "film" by

5. The unreported decision of the District Court, filed June 21, 1956, by Judge McGuire, is repeated below, omitting a footnote, "Findings of Fact" and "Conclusions of Law".

*Memorandum*

This is an action against the Commissioner of Patents under Section 145 of Title 35, U.S.C. Unlike the usual case under this section, however, there is no issue of patentability. The sole issue is whether the *specification* meets the requirements of Section 112 of Title 35 for a written description of the manner of *using* the invention.

The Board of Appeals relied upon the case of In re Bremner, Taylor and Jones, 182 F.2d 216, 37 CCPA 1032, to support its holding. There, the Court stated: "It is our view that no 'hard and fast' ruling properly may be made fixing the extent of the disclosure of utility necessary in an application, but we feel certain that the *law requires that there be in the application an assertion of utility and an indication of the use or uses intended.*" [sic]

The question, it would appear, is a close one. However, as was said in Abbott v. Coe, 71 App.D.C. 195, 197, 109 F.2d 449, 451 " 'While the judgment of Patent Office officials is not absolutely binding on the courts, it is entitled to great weight, and is to be overcome by clear proof of mistake.' "

Finding, therefore, no "clear proof of mistake," the Court concludes the ruling of the Patent Office should remain, as a consequence, undisturbed.

Order accordingly.

itself does not connote a particular use, the specification is defective as a matter of law."

Thus, the question decided in the Petrocarbon case, as related to product claim 55, was that the specification was not sufficient under 35 U.S.C. § 112 to teach a person of ordinary skill in the art how to use [6] the invention so defined.

In comparing the product defined in claim 55 with the three product claims in the present application, we note that appealed claim 39 calls for "the solid polymerization product of the pyrolyzed vapors of para-xylene * * * having a crystal structure, having a softening point about 300° C, and being insoluble in many organic solvents at ordinary temperatures." This polymer as defined in claim 39 is made from the identical starting material, para-xylene, as the polymer product called for in rejected claim 55 of the parent application. Being the same polymer in each case, the description of its properties in the claims does not distinguish the polymers of claim 39 from the polymers of said claim 55. Appealed claim 38 specifies that the starting material be 1,4-dimethyl naphthalene (instead of para-xylene as in claim 39). Appealed claim 36 states that the starting materials are "selected from the class consisting of polymethyl benzenes and polymethyl naphthalenes having from 2 to 6 methyl groups substituted in the nucleus with two of the methyl groups being in the 1,4-positions of one ring." While claims 36 and 38 are broader in scope than rejected claim 55 of the parent application in that they define a larger group of products from which to select the starting materials, the resultant polymers are inclusive of the product of said rejected claim 55. Therefore, the prior adjudication in the Petrocarbon case that the specification of the parent application did not satisfy the first paragraph of 35 U.S.C. § 112, decided the identical question which must be here resolved in determining whether the products of claims 36, 38 and 39 were "disclosed in the manner provided by the first paragraph of Section 112 of this title" in the parent application in order to get the benefit of the earlier filing date under 35 U.S.C. § 120. We think that the principle of collateral estoppel prevents our independent determination of this issue as to the appealed product claims 36, 38 and 39. However, as indicated in In re Nelson and Shabica, 280 F.2d 172, 47 CCPA 1031, we disagree on the merits with the result reached in Petrocarbon Ltd. v. Watson. In thus affirming the rejection of product claims 36, 38 and 39, we do so not on the merits but solely and only for the reason that we feel bound by the doctrine of collateral estoppel not to permit relitigation of this issue.[7]

As previously pointed out, the District Court and the Court of Appeals, D. C., made no distinction between the rejected product claim 55 and the rejected process claim 54 in finding that the specification was insufficient under 35 U.S.C. § 112. Implicit in this finding is the reliance by both courts on the decision of this court in In re Bremner, supra. The Bremner decision has been frequently relied upon by the Patent Office as support for the position that unless the specification discloses the "utility" of the product required by 35 U.S.C. § 101 and tells "how to use" the product under 35 U.S.C. § 112, a process for making the disclosed product must be rejected on both statutory bases.

---

6. "Utility" as required by 35 U.S.C. § 101 and a showing of "how to use" the invention as required by the first paragraph of 35 U.S.C. § 112 should not be confused as has often been done by courts, including this court in In re Bremner, supra. See In re Nelson and Shabica, 280 F.2d 172, 47 CCPA 1031.

7. After an independent and complete restudy of the entire Petrocarbon record and briefs, we reiterate what was said in the Nelson case:
"* * * our own reading of the specification leads us to the conclusion that anyone skilled in the plastics art, knowing all of the chemical and physical properties given for the film, would know of many possible uses for the polymers and how to use them."

This position appears to have been derived from this court's statement in Bremner that:

"It was never intended that a patent be granted upon a product, *or a process producing a product,* unless such product be useful." [Emphasis added.]

In our recent decision in In re Wilke and Pfohl, 314 F.2d 558, 50 CCPA 964, we had occasion to review the above quoted "rule of Bremner" and concluded that there was no statutory basis for such a rule. In the Wilke and Pfohl case, we held that, under the requirements of 35 U.S.C. § 112, it was sufficient if the specification disclosed to a person of ordinary skill in the art the steps of how to carry out the claimed process. Thus, the so-called "rule of Bremner" as applied to process claims, no longer exists in this court.

We are therefore faced with a situation in which we are asked to apply the doctrine of collateral estoppel to the appealed process claims because the Petrocarbon decision refused process claim 54 in the parent case by reliance upon the so-called "rule of Bremner" which has now been overruled by this court in its application to process claims.

A similar problem was resolved by the Supreme Court in Blair v. Commissioner, 300 U.S. 5, 7, 57 S.Ct. 330, 81 L.Ed. 465. There, a prior adjudication had held that the 1923 income of a trust was taxable income to the petitioner since, under state law, the trust was a spendthrift trust. Later a state court held the trust *not* to be a spendthrift trust. In a second proceeding, covering tax years 1924 through 1929, the Commissioner argued that the judgment relating to income in 1923 "is conclusive in this proceeding as *res judicata.*"[8] In refusing to apply collateral estoppel in this situation where the law

upon which the prior adjudication rested had been changed, the court stated:

"It is not necessary to review the respective contentions upon this point, as we think that the ruling in the Tait case is not applicable. That ruling and the reasoning which underlies it apply where in the subsequent proceeding, although relating to a different tax year, the questions presented upon the facts and the law are essentially the same. Tait v. Western Maryland Ry. Co., supra [289 U.S. 620], pp. 624, 626 [53 S. Ct. 706, 77 L.Ed. 1405]. Here, after the decision in the first proceeding, the opinion and decree of the state court created a new situation. The determination of petitioner's liability for the year 1923 had been rested entirely upon the local law. Commissioner v. Blair [7 Cir.], 60 F. (2d) 340, 342, 344. The supervening decision of the state court interpreting that law in direct relation to this trust cannot justly be ignored in the present proceeding so far as it is found that the local law is determinative of any material point in controversy. Compare Freuler v. Helvering, 291 U.S. 35 [54 S.Ct. 308, 78 L.Ed. 634]; Hubbell v. Helvering [8 Cir.], 70 F. (2d) 668."

In Commissioner of Internal Revenue v. Sunnen, supra, the Supreme Court again warned against the application of collateral estoppel where there had been a modification of the legal principles which had controlled the decision in the prior suit. The Court stated:

"* * * A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. *But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or*

---

8. *"Res judicata"* as used here means, more precisely, estoppel by judgment or collateral estoppel, since the "cause or demand" in the two proceedings were for different taxable years. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898.

*erroneous, at least for future purposes.* If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare United States v. Stone & Downer Co., 274 U.S. 225, 235–236 [47 S.Ct. 616, 71 L.Ed. 1013]. *Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel.* That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually *and legally.* It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers. [Emphasis added.]

"* * * But the intervening decision need not necessarily be that of a state court, as it was in the Blair case. While such a state court decision may be considered as having changed the facts for federal tax litigation purposes, a modification or growth in legal principles as enunciated in intervening decisions of this Court may also effect a significant change in the situation. Tax inequality can result as readily from neglecting legal modulations by this Court as from disregarding factual changes wrought by state courts. In either event, the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel. * * *"

It is clear to us that there has been "a modification of the controlling legal principles" as to the proper interpretation of 35 U.S.C. § 112 as applied to process claims since the Bremner decision in 1950.[9] It is equally clear that the courts in Petrocarbon Ltd. v. Watson, (1) in making no distinction between the process and product claims insofar as the requirements of 35 U.S.C. § 112 are concerned, (2) in citing and quoting the Bremner case, and (3) in limiting their discussions to the lack of disclosed utility for the product (the film of the solid polymers), relied on the "rule of Bremner" to find that the *process* claim 54 was properly rejected. Therefore, the situation before us as to the appealed *process* claims presents a recognized exception to the doctrine of collateral estoppel. Blair v. Commissioner, supra, Commissioner of Internal Revenue v. Sunnen, supra, Mandel v. Commissioner of Internal Revenue, 7 Cir., 229 F.2d 382; Henricksen v. Seward et al., 9 Cir., 135 F.2d 986, 150 A.L.R. 1.[10] We are, therefore, free to proceed to a determination on the merits of the issue as to whether the present application, insofar as the *process claims* are concerned, is entitled under 35 U.S.C. § 120 to the benefit of the filing date of the parent application.

As stated in In re Wilke and Pfohl, supra, a specification which teaches those skilled in the art how to use the process, i. e., by disclosing the manipulative steps of the process, the required operating conditions and the starting materials so that the process may be used by a person skilled in the art, meets the requirements of 35 U.S.C. § 112. It is not necessary to specify the intended uses for the product produced therein. It is our

---

9. It is also interesting to note that the present patent laws of Title 35, including 35 U.S.C. § 112, were passed in 1952, and made effective January 1, 1953, over two years after the Bremner decision of May 9, 1950.

10. See also Pelham Hall Co. v. Hassett, 1 Cir., 147 F.2d 63, 68; Commissioner of Internal Revenue v. Arundel-Brooks Concrete Corporation, 4 Cir., 152 F.2d 225, 227, 162 A.L.R. 1200; State Farm Mut. Auto Insurance Co. v. Duel, 324 U.S. 154, 162, 65 S.Ct. 573, 89 L.Ed. 812. See also 2 Freeman on Judgments, (5th Ed. 1925), Sec. 713.

opinion that the specification of the *parent* application here does in fact sufficiently disclose the invention of the appealed process claims so that a person skilled in the art could use or follow the claimed process.

 Appealed process claims 1 and 2 are the broadest in specifying that the starting materials be selected from a class consisting of (1) polymethyl benzenes and (2) polymethyl naphthalenes, each having from two to six methyl groups substituted in the nucleus with two of these groups in the 1,4 positions in one ring. As support in the parent specification, we find the following:

"(1) The invention consists in a process for the production of a polymer in which the vapour of an aromatic hydrocarbon consisting of from 1 to 4 benzene nuclei with two methyl groups substituted in the para positions of one benzene nucleus * * *."

and

"(2) The invention also consists of a process for the production of a polymer in which the vapour of 1,4 dimethyl naphthalene is pyrolysed * * *."

Appealed process claims 3, 4, 5 and 13 specify the starting material to be "1,4 dimethyl naphthalene". Appealed process claim 9 specifies "p-xylene" as the starting material. All these starting materials are specifically disclosed in the *parent* specification.

All of the appealed process claims specify reaction temperatures within the ranges of 700–1000°C. This limitation is clearly shown in the *parent* specification. All the appealed claims specify the reaction time to be "not more than one second" which is also disclosed in the specification of the *parent* application. We also find the claimed pressure ranges and temperatures at which the solid polymers are cooled for deposit to be disclosed in the *parent* specification.

All of the above constitutes a disclosure in the *parent* case of the process in the manner required by the first paragraph of 35 U.S.C. § 112. It is our conclusion, therefore, that the process claims 1–3, 5, 6, 9, 13 and 14 of the present appeal were disclosed in the earlier filed application "in the manner provided by the first paragraph of Section 112" of Title 35 of the U.S.Code and that applicant is therefore entitled to the benefit of the filing date of the parent application under the provisions of 35 U.S.C. § 120. Therefore, the effective date of filing the application on the process claims is the filing date of the *parent* application. This avoids the rejection under 35 U.S.C. § 102(b) and the rejection of the process claims by the Board of Appeals is *reversed.*

### PA 7000

 The remaining question raised by appellant in PA 7000 arises from the refusal of the Board of Appeals and the Commissioner to remand the case to the Primary Examiner for his consideration after it was remanded by this court for the purposes stated in our prior opinion, In re Szwarc, supra. We think it is entirely within the discretion of the Board of Appeals and the Commissioner to determine the proper tribunal within the Patent Office to make the determination requested. See In re Jewett et al., 247 F.2d 953, 45 CCPA 714.

In summary, we affirm the rejection of product claims 36, 38 and 39, but reverse the rejection of process claims 1–3, 5, 6, 9, 13 and 14.

Modified.

WORLEY, Chief Judge, with whom MARTIN, J., joins (dissenting).

The *controlling* issue here is whether Petrocarbon Ltd. v. Watson [1] is res judicata of the instant appeal. Clearly it is. In Petrocarbon the U. S. Court of Appeals for the District of Columbia Circuit held that appellant's parent application, upon which he *must* rely to prevail here, was

1. 101 App.D.C. 214, 247 F.2d 800, cert. denied 355 U.S. 955, 78 S.Ct. 540, 2 L. Ed.2d 531, petition for rehearing denied 356 U.S. 978, 78 S.Ct. 1134, 2 L.Ed. 2d 1146.

fatally defective as a matter of law.[2] We are urged to hold, in effect, that the same application is *not* fatally defective.

I am aware of no authority, statutory or judicial, which would allow this court to nullify the decision of a sister court of competent jurisdiction. I fail to see any relevance of Blair v. Commissioner[3] or Commissioner of Internal Revenue v. Sunnen[4] to the facts here, nor am I able to see how Wilke & Pfohl,[5] decided in 1963, can possibly provide any support for setting aside Petrocarbon, decided in 1957, and which remains unmodified.

To me this is a clear case of res judicata. In United States v. Munsingwear,[6] the Supreme Court cited as the classic statement of the rule of res judicata, the following from Southern Pacific R. Co. v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355:

> "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

That decision is subsequent to Sunnen, upon which the majority relies so heavily, and far more applicable to the instant controversy.

Closely paralleling this case is Hemphill Co. v. Coe.[7] There the Court of Appeals was asked to hold *operative* an alleged invention which this court had previously held *inoperative*. In refusing to do so the Court of Appeals stated: "Appellant seeks really to redetermine the question which the decision of the Court of Customs and Patent Appeals has concluded." We have the reverse situation here—appellant would have us *"redetermine"* the same question which the Court of Appeals has *"concluded."*

Clearly Szwarc and Petrocarbon are privy and the invention and the issue, i. e., the sufficiency of the Petrocarbon application in law are the same.[8] Initially appellant elected to go to the District Court, which was his privilege, rather than seek review in this court. He has had his *day in court*, including two unsuccessful attempts to obtain review by the Supreme Court.[9] He now seeks a second day in court, urging us to set what would be an intolerable precedent of legal chaos and uncertainty by reviewing, indeed by reversing, a question which has already been decided by a court of competent jurisdiction. That we cannot do.

I would affirm P.A. 6462 as to all claims, and would dismiss P.A. 7000 as not involving an appealable question.

2. The Szwarc application was held not to include an adequate description of the manner of using the invention as required by 35 U.S.C. § 112.

3. 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

4. 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

5. 314 F.2d 558, 50 CCPA 964.

6. 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36.

7. 74 App.D.C. 123, 121 F.2d 897.

8. Although the appealed claims here are different in number and language from those in Petrocarbon, they obviously define the same product and process and could be allowed only if we held, contrary to Petrocarbon, that the parent application includes a description of the product and process that is adequate under 35 U.S.C. § 112.

9. Supra, note 1.