55 CCPA

**Application of Hubert J. TIERNEY and Bertrand Y. Auger.**

**Patent Appeal No. 7874.**

United States Court of Customs and Patent Appeals.

Jan. 11, 1968.

Rehearing Denied March 7, 1968.

Robert E. Granrud, Walter N. Kirn, Jr., Carpenter, Kinney & Coulter, St. Paul, Minn., for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of all claims in appellants' application [1] entitled "Reinforced Resinous Structural Sheet Material."

Appellants' invention concerns reinforced resinous sheet material consisting of parallel glass filaments of small diameter and of a length substantially equal to the length of the sheet, saturated with an extremely viscous uncured epoxy resin. The glass content is from 35 to 65 per cent by volume of the sheet, and the filaments have a diameter of 0.00015 to 0.0006 inch. The epoxy resin component has a viscosity of 1 to 35 million poises at room temperature, so that the resin-impregnated glass, although somewhat tacky, is capable of being handled in sheet form. The epoxy resin contains a latent curing agent which will react rapidly with the epoxy resin at elevated temperatures to form a hard, tough thermoset material, but which will not so react for extended periods of time at normal room temperatures.

The product of the invention is produced by combining into a flat compact dense layer and in parallel alignment a plurality of glass filaments. The filaments are passed through a bath of solvent-free liquid epoxy resin at a temperature high enough to reduce the viscosity of the resin sufficiently to permit thorough saturation of the glass web but below the temperature required to cause reaction of the epoxy resin with the curing agent dissolved therein. The resultant resin-impregnated glass web is then squeezed between a pair of rollers to flatten the web, eliminate entrained air, and squeeze out sufficient resin to arrive at the desired glass/resin ratio.

The resin-impregnated web is cooled to room temperature whereupon it solidifies sufficiently to be handled. It is then wound on rolls and shipped to customers. The user cuts the sheet material to size, lays one or more layers over a form or mold, and heats the material under pressure to a temperature sufficient to activate the latent curing agent and form a thermoset article.

Claim 1 is illustrative:

1. As a new product of manufacture, a roll of at least 100 feet in length of thin, flexible, self-sustaining resinous sheet reinforced solely with non-woven lineally-aligned glass filaments, and capable of extended storage and transportation, the resinous sheet upon unwinding being capable of being rolled and re-rolled to pencil size in the crosswise direction without longitudinal splitting, of undergoing substantial crosswise stretching to conform it to complex surfaces without splitting, and inherently capable of being laid up in stacked segments and converted under heat and pressure to coherent multiple-layer, high structural strength, hard, uniform, void-free reinforced resinous structural members, which resinous sheet as manufactured in roll form for sale consists essentially of: a flat integral layer of uniformly-distributed, non-woven, lineally-aligned bundles of continuous glass filaments having a resin-receptive surface treatment and a diameter of 0.00015–0.0006 inch and saturated with and exclusively held together by a solvent-free thermosetting resin binder composition filling

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 354,822 filed March 23, 1964.

the layer; said resin composition essentially consisting of a polyglycidyl ether of a polyhydric phenol, having a viscosity of 1 to 35 million poises at room temperature and being capable of remaining within this viscosity range for at least two weeks under storage conditions at room temperature, but being fusible and heat-curable to a hard tough resin firmly bonded to said filaments; said sheet having a glass:resin volume ratio between about 65:35 and 35:65, having a uniform caliper thickness of about 6 to 20 nils, and having a nonporous, homogeneous cross-section; and the self-sustaining crosswise strength of the entire resinous sheet being due solely to the combination of the resin composition with said lineally-aligned filaments.

The other claims add recitations that the bundles of glass filaments are in nonoverlapping, shoulder-to-shoulder relationship, that the thickness of the sheet is from 6 to 10 mils, and that the article produced from the sheet material has certain minimum strength characteristics.

The claims of this application were rejected both on the ground of *res judicata* in view of an adverse decision by the Board of Appeals in appellants' parent application,[2] and on 35 U.S.C. § 103 in view of the same art which had been used in rejecting the claims of the parent application.

The references relied upon in rejecting the claims under 35 U.S.C. § 103 are patents to Tallman 2,552,124 and Mohrman 2,534,617.

Tallman discloses a resin-impregnated glass fabric having two layers. One layer consists of glass filaments of .00015 to .0003 inch diameter arranged "substantially in parallelism and substantially in lateral contact. The fibers of this sheet are preferably held together in the sheet by binding material distributed throughout the sheet and received in the spaces between the fibers." The second

layer is a very fine veil of haphazardly arranged interlaced fibers. The veil itself is much thinner than the layer of parallel filaments, and the fibers in the veil are much finer than the parallel filaments. The purpose of the veil is explained by the patentee:

> The combination of the veil with the sheet of parallelly arranged fibers resists splitting of the sheet along lines extending in the direction of the fibers of the sheet when the fabric is subjected to stresses applied transversely to the direction of the parallelly related fibers of the sheet.

The Tallman sheet material can either be made by bringing the two layers together before passing them through the resin bath or each layer can be impregnated separately. Tallman's description of this latter embodiment is very similar to appellants' disclosure of the process for producing their material. Tallman says:

> The sheet of parallel fibers may also be formed by an operation similar to the conventional warping procedure in which a multiplicity of intertwisted yarns or untwisted strands are drawn from the spools or other packages thereof and brought into parallelism in close adjacency to form a warp. This warp may also have a binding material applied thereto by spraying a solution of the material thereon or by passing the warp through a bath of the binding material in solution.

The preferred Tallman material would appear to contain only 2 to 10% resin, and thus require the addition of more resin for laminating purposes at the time of use. However, Tallman also discloses an embodiment in which sufficient resin is added to the glass at the time of production of the web to obviate the need for later resin addition. The patent states:

> In place of or in addition to the small amount of binding material applied to the fabric as previously mentioned, there may be applied to the parallel

2. Serial No. 767,583 filed October 16, 1958.

fibers of the sheet and, if desired, also to the fibers of the veil prior to the combining of the sheet and veil into the fabric, or to the sheet and veil after such combination, a laminating resin in a partially cured plastic state. The resin should be sufficiently viscous so that it will not run off the fabric but should also have a definite plastic stage that will exist for a fair length of time so that it does not harden before the fabric can be laid up as a laminate.

The Board of Appeals concluded that the Tallman product "appears to correspond generally to appellants' product, lacking only an explicit statement of the proportions of glass and resin." To supply this deficiency, the board relied on the Mohrman patent. This reference also discloses a web of parallel glass fibers held together with 1–2% of crosswise fibers and impregnated with resin. The glass/resin ratio is from 30:70 to 70:30. The board felt it obvious to combine these references to produce the Tallman product with a glass/resin ratio within the claimed range.

Appellants argue that Tallman and Mohrman considered a veil and crosswise fibers respectively to be essential ingredients of their webs, and that there is no basis for concluding that they suggest a web having solely lineally-aligned filaments. As the Solicitor points out, however, Tallman uses the veil only for crosswise support and strongly intimates that the veil is at least somewhat detrimental to the web characteristics:

The fabric made in this way is highly suited to the manufacture of plastic laminates and other reinforced resinous articles since it provides the high density of fibrous material and the great strength achieved from the presence of the sheet of compactly arranged parallel glass fibers while the veils of haphazardly arranged fibers not only increase the integrity of the fabric and prevent tearing or splitting thereof during handling and transportation but also is of such thickness as not to *appreciably* detract from the compact relation of the parallel fibers and the consequent overall high density of the laminate. [Emphasis added.]

This disclosure appears to suggest that the veil should desirably be eliminated whenever possible, and this should be possible in the embodiment wherein laminating resin is added to the web, "adhesively securing the fibers together."

Appellants also argue that neither reference suggests a resin binder having a viscosity of 1 to 35 million poises and capable of maintaining that viscosity for extended periods of time. However, Tallman does disclose a resin having "a definite plastic stage that will exist for a fair length of time so that it does not harden before the fabric can be laid up as a laminate." Appellants' epoxy resin would appear to have been an obvious candidate for use as Tallman's pre-impregnating resin, the board's uncontroverted finding on this point being "that appellants are using a known resin in a known relationship for its known advantages."

Appellants further attempt to distinguish their invention from the prior art in requiring the use of a solvent-free thermosetting resin. Tallman, however, does not indicate that her laminating resin is in solution form, but says instead that it is "in a partially cured plastic state" and "should be sufficiently viscous so that it will not run off the fabric." Appellants' epoxy resin would appear to be suggested by this disclosure.

The other recitations appearing in the various claims on appeal do not impress us as defining subject matter which is patentable in view of the prior art.

Appellants attempted to overcome the obviousness rejection by the filing of two affidavits. The Modig affidavit attempted to show that the Tallman web containing a veil could not be produced having a glass/resin ratio in the claimed range without crushing of the veil. The issue, however, is whether it would be obvious to *omit* the veil from the Tallman product. The affidavit does not

touch this issue at all, and is therefore ineffective in attempting to overcome the rejection.

■■ The Tierney affidavit presented evidence that the product of the invention had satisfied long-felt needs in the production of certain laminated articles. Such considerations do have relevance to the issue of obviousness, Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. However, we agree with the board that the showing of the affidavit lacks sufficient weight to overcome the strong evidence of obviousness presented by the references.

Our study of the record in this case and the arguments presented by counsel fail to persuade us that the board erred in its affirmance of the rejection under 35 U.S.C. § 103 and that decision is therefore affirmed. In view of this affirmance, we find it unnecessary to consider the *res judicata* rejection.

Affirmed.

SMITH, Judge (concurring).

I agree with the decision of the majority on the issue of "nonobviousness" over the prior art under 35 U.S.C. § 103. However, I believe that before this issue can properly be decided, it is necessary to dispose of the rejection of appellants' claims on the ground of res judicata. My opinion is that this rejection should have been reversed. In re Hellbaum, 371 F.2d 1022, 54 CCPA 1051 (1967).

The application here on appeal is denominated by the appellants as a "continuation" of Serial No. 767,583 filed October 16, 1958, in which an appeal to the Board of Appeals resulted in a decision adverse to the appellants. All of the presently appealed claims were rejected on the ground of res judicata in view of a prior decision by the board on the claims in the earlier application.

It seems to me that a primary consideration necessarily is whether this rejection on the ground of res judicata is proper. If proper, the rationale which underlies it is that the same *issues* now presented to the board had been decided adversely to appellants' position. Here, we have alternative grounds of rejection, but the res judicata rejection, if sustainable, would, in my view, be dispositive.

Turning then to the merits of the res judicata rejection, I note that the examiner enumerated the following differences in the appealed claims over the previously adjudicated claims:

\* \* \* The only differences between the present claims and the previously considered claims and as admitted by appellants (note page 9, last paragraph of the brief) is that claims 1 and 4 define the resin composition as "being capable of remaining within the viscosity range (1 to 35 million poises) for at least two weeks under storage conditions at room temperature". Claims 2 and 3 specify stability "for months" under the same conditions. The present claims are otherwise structurally similar to claims 8–10 of the appealed [parent] application and the Court of Appeals has previously held that claims in an applicants' earlier application considered unpatentable over certain patents, the applicants are bound by that decision, and only if the claims on appeal are patentably different from the subject matter of those claims is appellant entitled to have them considered on their merits. In re Prutton [40 CCPA 975, 204 F.2d 291, 97 USPQ 447 (1953)]. The present claims merely by more clearly reciting viscosity conditions under specified storage conditions are not deemed patentably distinct over the previously considered claims which were rejected as unpatentable over the patents of record. \* \* \*

The board affirmed, elaborating somewhat to the effect that:

The first change is mentioned on page 18 of appellants' brief while at the same time acknowledging that the prior art shows a roll of material, but there is no indication why the figure of 100 feet was selected, other than the fact that it is a round figure of three digits. Clearly, appellants cannot as-

sert that a 50 foot roll or a 90 foot roll is patentably distinguishable from "a roll of at least 100 feet in length." We do not consider this change to be worthy of further discussion.

The second change involves a more precise definition of the storage conditions, *causing the Examiner to omit a rejection on the ground of indefiniteness,* but the substantive aspect of the claim, as regards its patentability over the art, has not been affected in any way.

\*    \*    \*    \*    \*    \*

The foregoing holding leads to the conclusion that *res judicata* is here applicable, consistently with the decisions in In re Prutton, [supra,] and In re Lundberg et al., [47 CCPA 1140, 280 F.2d 865, 126 USPQ 412 (1960)] unless there is some good reason why the principles of these decisions are not controlling.

Appellants contend that the affidavits of Gerald R. Modig and Hubert J. Tierney in the present record constitute evidence justifying a different decision and they rely upon certain decisions to support their position. [Emphasis added.]

After distinguishing certain decisions, the board stated:

In accordance with the foregoing discussion, the newly submitted affidavits of Modig and Tierney can have no effect on the issue of *res judicata,* and the rejection on this ground must be sustained.

I think it is quite clear that the decision of the board affirming the examiner's rejection on that ground may not stand. Initially, the claims here presented in this appeal, differing as they do from the claims previously adjudicated may well present different issues of patentability than were previously decided. In re Hellbaum, supra; In re Szwarc, 319 F.2d 277, 50 CCPA 1571 (1963); In re Fried, 312 F.2d 930, 50 CCPA 954 (1963). The board's reliance upon our decisions in *Prutton* and *Lundberg* in deciding that the change in appellants' claims present again the *same* issues of patentability is not proper. See In re Herr, 377 F.2d 610, 54 CCPA 1315 (1967) (especially concurring opinions). Moreover, appellants' change eliminated the prior rejection on the ground of indefiniteness. A "definite" claim, in my view, presents a substantially different issue of patentability than an "indefinite" claim.

In any event, the fundamental error of the board resides in its failure to give "effect" to the "newly submitted affidavits of Modig and Tierney." In re Herr, supra. Appellants' development of a broader factual base upon which to urge patentability is the essence upon which legal conclusions under section 103 are predicated. That development may not be arbitrarily foreclosed by the Patent Office by improperly asserting that the *same* issues had previously been decided.[1] Thus, I would reverse the decision of the board insofar as it affirms the examiner on the issue of res judicata.

---

1. See Schwartz, Res Judicata as Applied in Patent Office Prosecution and Patent Enforcement Litigation, 49 J.P.O.S. 637 (1967).