AMGEN, INC., Plaintiff–Appellee,

and

Ortho Biotech, Inc., OMJ Pharmaceutical, Inc. and Ortho Pharmaceutical Corp., Plaintiffs–Appellees,

v.

GENETICS INSTITUTE, INC., Defendant–Appellant.

No. 95–1247.

United States Court of Appeals, Federal Circuit.

Oct. 25, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Jan. 3, 1997.

tro Huddleson & Tatum, Palo Alto, CA, and Steven M. Odre and Stuart L. Watt, Amgen, Inc., Thousand Oaks, California.

David F. Dobbins, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, argued, for plaintiffs-appellees. With him on the brief, were Gregory L. Diskant, Jeffrey I.D. Lewis, and Richard S. Eisert.

Paul H. Heller, Kenyon & Kenyon, New York City, argued, for defendant-appellant. With him on the brief, were Paul Lempel and John R. Moore. Also on the brief, were William F. Lee and David B. Bassett, Hale & Dorr, Boston, MA, and Scott A. Brown and Bruce M. Eisen, Genetics Institute, Inc., Cambridge, MA. Of counsel, was Lawrence V. Stein, Genetics Institute, Inc.

Before NEWMAN, LOURIE and BRYSON, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

At issue in this declaratory action is United States Patent No. 5,322,837 (the '837 patent) entitled "Homogeneous Erythropoietin Compositions and Methods of Using Same." The patentee is Genetics Institute, Inc.; the accused infringers are Amgen, Inc. and its distributors or licensees Ortho Biotech, Inc., OMJ Pharmaceuticals, Inc. and Ortho Pharmaceutical Corp. (collectively herein Amgen).

The '837 patent is a continuation of United States Patent No. 4,677,195 (the '195 patent), having the same specification. In a previous suit involving the same parties in interest, styled *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 18 USPQ2d 1016 (Fed.Cir.), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991) (*Amgen II*), the claims of the '195 patent were held to be invalid under 35 U.S.C. § 112 for lack of enablement. In the case now before us the district court held,[1] upon summary judgment, that this suit for infringement of the claims of the '837 patent is precluded by the ruling of non-enablement in *Amgen II*. We affirm.

D. Dennis Allegretti, Banner & Allegretti, Boston, MA, argued, for plaintiff-appellee. With him on the brief, were Dale A. Malone and John P. Iwanicki. Also on the brief, were Lloyd R. Day, Jr., David M. Madrid, and Robert M. Galvin, Cooley Godward Cas-

1. *Amgen, Inc. v. Genetics Institute, Inc.*, No. 94–Civ–1818 (D.Mass. March 29, 1995) (Memorandum and Order).

*SUMMARY JUDGMENT*

 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The appellate court must independently determine whether the standards for summary judgment have been met. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 72 F.3d 857, 860, 37 USPQ2d 1161, 1162 (Fed.Cir.1995). On motion for summary judgment, the court views the evidence and any disputed factual issues in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Allied Colloids, Inc. v. American Cyanamid Co.,* 64 F.3d 1570, 1573, 35 USPQ2d 1840, 1841 (Fed.Cir.1995). When a party moves for summary judgment of res judicata or other basis of preclusion, it must be shown that the claim or issue would be precluded even on the non-movant's version of the case. *See generally Festo Corp.,* 72 F.3d at 860, 37 USPQ2d at 1162; *Kearns v. General Motors Corp.,* 94 F.3d 1553, 1555–56, 39 USPQ2d 1949, 1951 (Fed.Cir.1996).

## BACKGROUND

Erythropoietin (EPO) is a hormone that is used in treatment of anemia, renal failure, and other conditions associated with low levels of production of red blood cells. It is produced in minute quantities in the human body, and was obtained by Genetics Institute from the urine of persons with aplastic anemia. This product is called uEPO. Amgen synthetically produced EPO using recombinant DNA technology. This product is called rEPO. The separation and purification of uEPO as well as the production of rEPO are complex and difficult procedures, evolving over many years of scientific research. This history is summarized in *Amgen II* and in somewhat greater detail by the district court in *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 13 USPQ2d 1737 (D.Mass.1989) (*Amgen I* ).

The purity of a complex protein is described by its homogeneity, that is, the degree to which the desired protein is free of undesired proteins and other contaminants. Homogeneity may be measured by reverse phase high performance liquid chromatography (RP–HPLC), wherein movement of the composition as a single peak is an indicator of a substantially pure product.

Another indicator of purity is the specific activity of the protein composition. Specific activity measures the biological potency of the protein, and is expressed as international units (IU) of potency per absorbance unit (AU) of the composition. The AU for EPO has been established as the amount of light that is absorbed by the composition under designated conditions at a wavelength of 280 nanometers. The higher the specific activity of the sample, the fewer impurities in the composition. *See Amgen I,* 13 USPQ2d at 1754–58.

*Amgen I* and *Amgen II* were concerned with Genetics Institute's '195 patent, which claimed homogeneous EPO characterized by its molecular weight, RP–HPLC performance, and specific activity. The relevant '195 patent claims were as follows:

1. Homogeneous erythropoietin characterized by a molecular weight of about 34,000 daltons on SDS PAGE, movement as a single peak on reverse phase high performance liquid chromatography and a specific activity of at least 160,000 IU per absorbance unit at 280 nanometers.

3. A pharmaceutical composition for the treatment of anemia ·comprising a therapeutically effective amount of the homogeneous erythropoietin of claim 1 in a pharmaceutically acceptable vehicle.

This court concluded in *Amgen II* that the '195 specification did not enable EPO having a specific activity of at least 160,000 IU/AU. The court held, reversing *Amgen I,* that the patent "fails to enable purification of either rEPO or uEPO." *Amgen II,* 927 F.2d at 1217, 18 USPQ2d at 1030.

Genetics Institute had initially sought to claim homogeneous EPO without limitation to the specific activity of the product. After the decision in *Amgen II* Genetics Institute proceeded with prosecution of a continuation

of the '195 patent, presenting for examination claims without a specific activity limitation, duly directing the examiner's attention to the decision in *Amgen II*. This continuation application led to grant of the '837 patent. Genetics Institute states that it always viewed its invention as homogeneous EPO unlimited by any numerical specific activity, and that the '837 specification and claims are to this effect. Claim 1 is representative:

> 1. A pharmaceutical composition for stimulating production of red blood cells comprising a therapeutically effective amount of homogeneous human EPO protein characterized by a molecular weight of about 34,000 daltons in a single band on SDS PAGE and movement as a single peak in reverse phase high performance liquid chromatography and a pharmaceutically acceptable vehicle.

After the '837 patent issued, Genetics Institute again sued Amgen for infringement.

Amgen moved for summary judgment on the ground that Genetics Institute is barred by the doctrine of res judicata, claim preclusion, or issue preclusion, from bringing this infringement action against Amgen or its privies. The district court agreed, holding that "Genetics is bound by the prior determination that the '195 patent specification does not enable the making of homogeneous EPO, and thus may not assert the virtually identical claims of the '837 patent against Amgen's homogeneous rEPO product." This appeal followed.

## DISCUSSION

■■■ A final judgment on the merits bars relitigation of the same cause between the same parties. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Thus, a claim that was litigated and decided on its merits can not be presented in a second suit. The doctrine of issue preclusion is of similar effect; it requires that the identical issue was fully litigated in a prior suit between the same parties or their privies, and that resolution of the issue was essential to the judgment in the prior suit. *Montana v. United States,*

440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *see* 1B James Wm. Moore et al., Moore's Federal Practice ¶¶ 0.401, 0.405, 0.441 (2d ed. 1992).

■■■ Amgen states that whether on a theory of res judicata, claim preclusion, or issue preclusion, *see* Moore et al., *supra,* Genetics Institute's suit for infringement of the '837 patent is barred by the *Amgen II* decision of non-enablement of purified EPO. In *Amgen II* this court held that EPO having a specific activity of at least 160,000 IU/AU was not enabled by the description in the '195 specification. In the case now before us the district court held that since the '195 specification did not enable EPO having a specific activity of at least 160,000 IU/AU, enablement of that product could not be relitigated for the identical '837 specification. The district court observed that the '837 claims are of a scope that includes EPO having a specific activity of at least 160,000 IU/AU, and that claims of that scope were finally held to be not enabled in *Amgen II*.

Genetics Institute states that since no specific activity is required by the '837 claims, enablement of the 160,000 IU/AU specific activity explicitly stated in the '195 claims is not dispositive of enablement of the broader '837 claims. Genetics Institute argues that the decision in *Amgen II* was limited to whether the specification enabled EPO having a specific activity of at least 160,000 IU/AU, and that the invention claimed in the '837 patent is a different, broader invention directed to homogeneous EPO generally. Genetics Institute states that since none of the '837 claims requires EPO of at least 160,000 IU/AU, the *Amgen II* decision of non-enablement of the '195 claims does not affect the enablement of the '837 claims.

Genetics Institute is correct that it was not decided in *Amgen II* whether the '195 specification enables any EPO compositions having a specific activity below 160,000 IU/AU. However, as the district court discussed, it was at issue in *Amgen II* whether purified EPO as required by the specification and prosecution history, was enabled. Accepting for purposes of Amgen's motion for summary judgment that the '195/'837 specification en-

ables the EPO compositions having the specific activities exemplified therein, all of which are well below 160,000 IU/AU, the district court correctly held that Genetics Institute is precluded by *Amgen II* from asserting that the '195/'837 specification enables claims that include EPO compositions having a specific activity of at least 160,000 IU/AU. *See In re Szwarc,* 50 C.C.P.A. 1571, 319 F.2d 277, 284, 138 USPQ 208, 214 (1963) (later claims broader in scope than the previously deficient claim were precluded because the later claims included the unenabled product of the previously rejected claim); *see also In re Katz,* 58 C.C.P.A. 713, 467 F.2d 939, 167 USPQ 487 (1970) (claims were precluded which described the structural equivalent of claims already adjudicated).

In its charge of infringement, Genetics Institute states that claim 1 of the '837 patent encompasses Amgen's products having a specific activity of at least 160,000 IU/AU. On Genetics Institute's necessary interpretation of the scope of the '837 claims in order to pursue this infringement action, the same issue of enablement arises as was decided in *Amgen II.* The district court correctly held that this issue is precluded.

Genetics Institute argues that the district court's holding violates the rule that each patent and each patent claim is a separate invention and must be considered separately. Genetics Institute points out that the '837 patent could not have been litigated in *Amgen I* and *Amgen II,* for the '837 patent was not issued until after the litigation of the '195 patent was concluded. We have recently reaffirmed that each patent constitutes a distinct property right, *see Kearns,* 94 F.3d at 1555, 39 USPQ2d at 1950, and of course suit can not be brought for infringement of a patent that has not issued. However, in *Amgen II* enablement was fully litigated for the identical product on the identical specification. That issue can not be relitigated, although it could not be raised until the continuation patent was granted. *Cf. In re Freeman,* 30 F.3d 1459, 1466, 31 USPQ2d 1444, 1448–50 (Fed.Cir.1994) (district court decision of issue in infringement suit precluded different interpretation in subsequent reexamination proceeding).

■ Genetics Institute argues that it has yet to be litigated whether homogeneous EPO *can* have a specific activity below 160,-000 IU/AU. In *Amgen II* this court accepted and relied on Genetics Institute's representations, in prosecution of the '195 patent, that homogeneous EPO has a specific activity of at least 160,000 IU/AU. Questions of lower specific activities were not necessary to the decision in *Amgen II.* Nor is this aspect of relevance to the decision herein, for the basis of Genetics Institute's complaint is that the '837 patent claims encompass Amgen's EPO having a specific activity of at least 160,000 IU/AU. Non-enablement of that claim scope was finally decided in *Amgen II.* Consequently, summary judgment that Genetics Institute may not assert the '837 patent claims against the Amgen EPO was properly granted.

## COSTS

Costs to Amgen.

*AFFIRMED.*