**MSM INVESTMENTS COMPANY, LLC, Plaintiff,**

v.

**CAROLWOOD CORPORATION, G. Rex Bailey, Stephen J. Locke, Trimedica International, Inc., Natural Balance, Inc., dba Pep Products, Inc., Nurgetics, Inc., dba Bio Synergy Neutriceuticals, Vidot Enterprises, Inc., Defendants.**

No. 98–20238 EAI.

United States District Court, N.D. California.

Sept. 30, 1999.

Bruce S. Osterman, Law Office of Bruce S. Osterman, San Francisco, CA, William A. Birdwell, Allen Field, JaneAnne Peterson, Birdwell & Janke, Portland, OR, for plaintiff.

Don H. Marmaduke, Jon P. Stride, David S. Aman, Tonkon Torp LLP, Portland, OR, James J. Elacqua, Brobeck Phleger & Harrison LLP, Palo Alto, CA, for defendant.

INFANTE, Chief United States Magistrate Judge.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR INVALIDITY UNDER 35 U.S.C. § 102(b) AND § 103

Plaintiff MSM Investments Co., LLC. sued Defendants (collectively "Carolwood") for infringing U.S.Patent No. 5,071,878 ("the '878 patent"). In response, Defendants raised several affirmative defenses, including patent invalidity. By the instant motion, Defendants move for summary judgment that claims 1–8 of the '878 patent are invalid over an alleged public use under 35 U.S.C. § 102(b).

## I. INTRODUCTION

Having considered the written submissions of the parties and the oral arguments of counsel, the Court GRANTS the motion

for summary judgment.[1] Based on the evidence presented, the Court finds that no genuine issue of material fact exists and that claims 1–8 of the '878 patent are invalid, as a matter of law, under 35 U.S.C. § 102(b). The Court's analysis is set forth below.

## II. BACKGROUND

### A. The '878 Patent

U.S. Patent No. 5,071,878 issued on December 10, 1991, from an application filed on February 6, 1991. According to its title, the '878 patent relates to the use of methylsulfonylmethane ("MSM") to enhance the diet of an animal. The '878 patent names Robert J. Herschler as the sole inventor. Mr. Herschler assigned all rights to the '878 patent to MSM Investments in 1996. *See* Aman Aff., Exh. 16 (copy of assignment).

The '878 patent issued with a total of eight claims, two of which are independent (claims 1 and 5). The independent claims read as follows: [2]

1. A method of feeding [ ] an animal which comprises providing to the animal for ingestion a beneficial amount of methylsulfonylmethane which is in addition to any amount present as a naturally occurring constituent in the foodstuff ingested by the animal.

5. A method of increasing the amount of metabolizable sulfur ingested by an animal which comprises providing to the animal for ingestion thereby a beneficial amount of methylsulfonylmethane which is exogenous to and which is in addition to any amount thereof which is present as a naturally occurring ingredient of the foodstuff sources thereof ingested by the animal.

Claims 2, 3, and 4 depend from claim 1, and claims 6, 7, and 8 depend from claim 5. As can be seen, by the above claim language, these claims generally relate to methods involving the oral ingestion of MSM. For purposes of the instant motion, the claims are construed in accordance with the parties' agreed construction or, where the parties disputed the meaning of certain claim terms, by this Court's Order Regarding Claim Construction of U.S. Patent No. 5,071,878 dated July 23, 1999 ("Claim Construction Order"). To the extent resolution of any issues raised by this motion requires this Court to further construe the claims, the Court sets forth the further claim construction and supporting analysis herein.

The prosecution history offers insight into the '878 patent claims. In an Office Action dated May 14, 1991, the Patent Examiner assigned to the '878 patent application made three rejections. First, the Examiner rejected claims 1–4 as indefinite under 35 U.S.C. § 112, ¶ 2. Second, the Examiner rejected claims 1–4 under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 5–11 of U.S. Patent No. 4,616,039 ("the '039 patent"). The Examiner explained that "the determination of the optimum proportioning of ingredient is considered to be well within the skill of the art." Office Action, at 2:13–15. And third, the Examiner rejected claims 5–8 as unpatentable over claims 1–4 of the '039 patent, applying the same reasoning as in the second rejection. In an Amendment filed

---

1. On June 17, 1999, Plaintiff filed a motion to supplement the summary judgment record and for judicial notice. The Court grants the motion as to Plaintiff's request to supplement the record with the docket, injunction judgment, and stipulation of dismissal from *Herschler v. Foodscience Corp.*, Civil Action No. 90–84 (D.Vt.). The Court, however, declines to take judicial notice that no judgment of invalidity as to any patent claim was entered so as to preclude collateral estoppel.

2. In printing the '878 patent, the Patent Office erroneously included the phrase "the diet of" after the term "feeding" in the preamble of claim 1. This phrase was deleted during prosecution and, to avoid confusion, is omitted here.

June 11, 1991, Mr. Herschler overcame these rejections by amending the preamble of claim I and filing a terminal disclaimer.

The '878 patent claims priority to a chain of nine earlier-filed applications. The chain of applications and their relationships are summarized in the following table:

| Serial No. (Patent No.) | Filing Date (Issue Date) | Relationship to Parent |
| --- | --- | --- |
| 06/071,068 (4,296;130) | Aug. 6, 1979 (Oct. 20, 1981) | no parent |
| 06/277,592 (4,477,469) | Jun. 26, 1981 (Oct. 16, 1984) | divisional of 06/071,068 |
| 06/418,110 (4,514,421) | Sep. 14, 1982 (Apr. 30, 1985) | continuation-in-part of 06/277,592) |
| 06/584,354 (4,568,547) | Feb. 28, 1984 (Feb. 4, 1 986) | continuation-in-part of 06/418,110 and 06/277,592 |
| 06/601,771 (4,559,329) | Apr. 17, 1984 (Dec. 17, 1985) | continuation-in-part of 06/418,110 and 06/277,592 |
| 06/727,989 (4,616,039) | Apr. 29, 1985 (Oct. 7, 1 986) | continuation-in-part of 06/418,110, 06/584,354, 06/601,771 |
| 06/878,948 (4,863,748) | Jun. 26, 1986 (Sep. 5, 1989) | divisional of 06/727,989 and continuation-in-parts of 06/418,110, 06/584,354, 06/601,771, 06/727,989 |
| 07/385,117 (4,973,605) | Jul. 26, 1989 (Nov. 27, 1990) | divisional of 06/878,948 |
| 07/564,946 | Aug. 9, 1990 | divisional of 07/385,117 |
| 07/654,856 (5,071,878) | Feb. 6, 1991 (Dec. 10, 1 991) | continuation-in-part of 07/564,946 |

The parties dispute the effective filing date of the '878 patent. Defendant Carolwood contends that the effective filing date of the '878 patent is September 14, 1982 (the filing date of the '421 patent). Motion, at 6:22–23. MSM Investments argues that the effective filing date is August 6, 1979, based on the '130 patent. Opposition, at 15:9–19.

■ Whether the '878 patent is entitled to an effective filing date based on the '130 patent depends on the adequacy of the '130 patent disclosure to support the '878 patent claims. While the '130 patent is generally directed to the topical use of MSM for cosmetic purposes, the '130 patent contains three passages relevant to the '878 patent claims. The first reference appears in the section of the '130 patent entitled "Summary of the Invention" and reads as follows:

Depending on its intended use, a preparation can contain MSM in solution or in a dispersion. It may take the form of a cream, lotion, gel or paste for topical administration or a liquid, solid or vapor for administration by other routes such as injection, inhalation, oral injestion [sic] and the like.

'130 patent, at 2:41–47. The second and third references appear in the section entitled "Description of Preferred Embodiments." The second reference reads as follows:

[MSM] can be included in syrups, tablets or capsules which are ingested to preserve the pliancy of intestinal and other tissue.

'130 patent, at 4:10–12. And, the third reference reads as follows:

MSM Administered Orally

Example 16

To determine whether living animal subject would react adversely to orally administered compositions of MSM, a 40 weight percent solution of MSM in distilled water was prepared. This solution was administered orally to laboratory rats at such a rate that each rat received 20 grams of MSM per kilogram of body weight per day.

After six weeks of administration, none of the animals had died or displayed unusual symptoms or behavior. '130 patent, at 11:50–61. Neither party points to any other passages of the '130 patent as supporting the '878 patent claims.

## B. The Jacob Clinic Activities

Carolwood relies on activities occurring at the Jacob Clinic in 1981 as invalidating the '878 patent claims. According to Carolwood, these activities constitute a "public use" under 35 U.S.C. § 102(b).

Much of the evidence offered by Carolwood remains uncontroverted and comes in the form of deposition and trial testimony from several witnesses and patient records. According to the evidence (which MSM Investments concedes), Dr. Jacob administered MSM to human patients for oral ingestion at an outpatient clinic at the Oregon Health Sciences University (referred to herein as the "Jacob Clinic") before September 14, 1981, as a pain reliever. See Opposition, at 11:24–25, 13:4–5. The evidence shows that Dr. Jacob administered the MSM during a period beginning as early as February, 1981 through September 14, 1981. See Amman Aff., Exh. 5; Exh. 7, p. 8; Exh. 9, pp. 3 and 5; Exh. 10. Dr. Herschler initially supplied Dr. Jacob with MSM, but did not control Dr. Jacob's use of MSM at the clinic. Amman Aff., Exh. 7, p. 10. At least in some cases, the amount administered was up to one-half teaspoon, twice daily, in powered form mixed in water or orange juice and was administered for months at a time. See Motion, at 4:4–12 and cited exhibits; Reply, at 3:19–21 and cited exhibits. MSM Investments does not challenge Carolwood's contention that one-half teaspoon of powdered MSM is roughly 2 grams. Motion, at 4:6–7. The evidence shows that the patients were informed that they were being treated with MSM. See Amman Aff., Exh. 7, pp. 11–12, Exh. 10.

Additional findings surrounding the activities at the Jacob Clinic were made by the Vermont district court in *Foodscience*. These findings are summarized below in the section entitled "Related Patent Litigations." In its opposition, MSM Investments has not asserted, much less shown, that any of the findings relating to the Jacob Clinic activities made by the *Foodscience* court were incorrect.

## C. Related Patent Litigations

MSM Investments (or Mr. Herschler, the prior patent holder) has been involved in several related patent litigations. Two of those litigations are described below.

### 1. The Foodscience Litigation

In *Herschler v. Foodscience Corp.*, Mr. Herschler brought suit in Vermont for, among other things, infringement of the '039 and '748 patents. In a bench trial, the Vermont court found the patents infringed and not invalid. See *Herschler v. Foodscience Corp.*, Civil Action No. 90–84 (D.Vt. Nov. 5, 1992) (*Foodscience I*) (Aman Aff., Exh. 14). The Vermont court made detailed findings about the activities at the Jacob Clinic. Among these findings were that Dr. Jacob's administration of DMSO2 (another shorthand for methylsulfonylmethane) treatments between 1980 and 1981 was not experimental but rather was public, and was limited to the pharmaceutical and non-pharmaceutical use of DMSO2. *Foodscience I*, at 4–5. The Vermont court also found that Dr. Jacob did not treat his patients with DMSO2 as a nutrient affecting diet, that Mr. Herschler discovered without Dr. Jacob's knowledge that DMSO2 acts as a nutrient and determined that DMSO2 should be included in one's diet to improve overall health, and that Dr. Jacob and the clinic had no involvement in the use of DMSO2 as a diet supplement. *Id.* at 5. Based on these findings, the court concluded that Foodscience had not met its burden of proving invalidity. *Id.* at 11. Carolwood represents that the same evidence presented to the Vermont court has been submitted to this Court in connection with the present motion for summary judgment. See Motion, at 9:8–9.

On appeal, the Federal Circuit reversed part of the district court's validity finding

and held that "the claims that include human use are invalid based on prior public use at the Jacob Clinic, whereas those claims that are limited to non-human use were not invalidated by the use at the Clinic." *Herschler v. Foodscience Corp.,* 64 F.3d 677 (Fed.Cir.1995) (*Foodscience II*) (Aman Aff., Exh. 6). The invalidated claims include claims 1–3, 5–8, and 10. In its decision, the Federal Circuit was silent as to its reason for reversing the district court's finding of no invalidity. Consequently, it is unclear whether the Federal Circuit found error in the district court's claim construction, its factual findings with respect to the prior art, or its comparison of the prior art with the claims.

### 2. The Jacob Litigation

*MSM Investments Co., LLC v. Jacob,* case no. CV 97–1522–AA, was brought in Oregon. There, MSM Investments sued several companies and individuals, including some of the same defendants in the instant litigation, for infringement of the '039 patent. At the hearing on the instant motion, counsel represented that dispositive motions have been filed with the Oregon court in the *Jacob* case and that they are scheduled for hearing in October, 1999. A trial has been scheduled for February, 2000.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, where the moving party has the burden of proof on a claim or defense raised in the summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense. *Meyers v. Brooks Shoe Inc.,* 912 F.2d 1459 (Fed.Cir.1990). Because a patent is presumed valid, 35 U.S.C. § 282, the accused infringer (in this case, Carolwood) bears the burden of proving invalidity by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed.Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex* at 324, 106 S.Ct. 2548. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Fed.R.Civ.Proc. 56(c). A material fact is one which might affect the outcome of the case under the applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be

drawn in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.* Finally, mere denials or conclusory statements are insufficient to create a genuine issue of material fact. *Armco v. Cyclops Corp.,* 791 F.2d 147, 149 (Fed.Cir.1986).

Summary judgment is not precluded, however, when there is a dispute over a question of law, such as claim scope or construction. *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 (Fed.Cir.1987). Thus, when facts are not in dispute, but their legal significance is, the matter is amenable to summary determination. *Paperless Accounting, Inc. v. Bay Area Rapid Transit System,* 804 F.2d 659, 662 (Fed. Cir.1986).

## IV. DISCUSSION

Carolwood offers two grounds in support of summary judgment. First, Carolwood invokes the collateral estoppel doctrine and argues that the findings made in *Foodscience II* invalidating the narrower '039 patent claims preclude MSM Investments from litigating the validity of the broader '878 patent claims. Second, Carolwood contends that the Jacob Clinic activities constitute an anticipatory "public use" under 35 U.S.C. § 102(b) so as to invalidate all of the '878 patent claims.[3] Each ground is analyzed in turn.

### A. Collateral Estoppel

 The doctrine of collateral estoppel protects a defendant from the burden of litigating an issue that has been fully and fairly tried in a prior action and decid-

ed against the plaintiff. *Comair Rotron, Inc., v. Nippon Densan Corp.,* 49 F.3d 1535, 1537 (Fed.Cir.1995). The requirements for collateral estoppel are as follows: (1) in the prior action, the party against whom estoppel is sought had a full and fair opportunity to litigate the issue; (2) the issue was actually litigated; (3) the controlling facts and applicable legal rules were the same in both actions; (4) resolution of the particular issue was essential to the final judgment in the first action; and (5) the identical issue was decided in the first action. *Id.* (citing *Montana v. United States,* 440 U.S. 147, 153–55, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *see also Steen v. John Hancock Mutual Life Insurance Company,* 106 F.3d 904 (9th Cir.1997). While Ninth Circuit collateral estoppel law governs, *see Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,* 170 F.3d 1373, 1381 n. 4 (Fed.Cir.1999), Federal Circuit law may be instructive in applying collateral estoppel principles in the patent context.

Carolwood argues that the invalidity findings made in the *Foodscience* case collaterally estop MSM Investments from litigating the validity of the '878 patent. The basis for this argument is that the '878 patent claims presently at issue are the same or broader in scope than the '039 patent claims previously found to be invalid in *Foodscience II* and therefore must be invalid, as a matter of law, over the same invalidating prior art. MSM Investments responds by arguing that collateral estoppel does not apply because the identical issues were not litigated in the *Foodscience* case and the Federal Circuit in *Foodscience II* was ambiguous in its reasons for invalidating the '039 patent claims that included human use.

---

3. With respect to claim 2, Carolwood moves alternatively for invalidity based on obviousness under 35 U.S.C. § 103. Because the Court finds that the Jacob Clinic activities anticipate claim 2 and Carolwood presents no specific arguments or evidence supporting obviousness, the Court denies Carolwood's motion for summary judgment to the extent it is based on obviousness apart from anticipation.

In analyzing whether collateral estoppel applies here, the Court adopts an initial approach of comparing the '878 patent claims with the '039 patent claims. Differences in scope, to the extent they raise new questions that were not adjudicated in the prior litigation and may be determinative of the issue under consideration in the later case, preclude application of collateral estoppel. *See Westwood Chemical, Inc. v. United States,* 207 Ct.Cl. 791, 525 F.2d 1367, 1375 (1975) (when a comparison of adjudicated claims and unadjudicated claims reveals "some differences of a substantive nature," the court must further analyze the significance of those differences in considering whether collateral estoppel applies); *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1136 (Fed.Cir. 1985) ("[when] estoppel [is] raised as to unadjudicated claims of a patent whose other claims had been adjudicated in an earlier action, ... a pragmatic approach [is] to determine whether any new issues [are] raised as to the nonlitigated claims."). Such differences, if they exist, subvert the "full and fair opportunity" requirement and the "identical issue" requirement. That the newly raised questions may ultimately be resolved against the patent holder does not alter the inapplicability of collateral estoppel. Without prior opportunity to "fully and fairly" litigate a potentially determinative issue presented for the first time in the later case, the prior adjudication is impotent in the later case.

█ In the instant case, the '878 patent claims presently at issue and the previously adjudicated '039 patent claims differ in scope in several critical respects. First, the '878 patent claims are, in some respects, broader in scope. For example, the '878 patent claims are not restricted by any limitations requiring that the animal's diet be deficient in metabolizable sulfur or insufficient to maintain certain body levels of MSM, as recited in claims 1 and 5 of the '039 patent, respectively. The '878 patent claims are also not restricted by any limitations requiring that the amount of MSM be equivalent to at least 0.01 mg/kg of body weight per day or effective to maintain the body levels at least 1 ppm, as recited in claims 1 and 5 of the '039 patent, respectively. The absence of these limitations in the '878 patent claims raises a new issue—whether the '878 patent claims are supported by the '130 patent in compliance with section 112, paragraph 1, such that they are entitled to an effective filing date based on the '130 patent. *See Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 93 F.3d 1572, 1582 n. 7 (Fed.Cir. 1996) (a disclosure inadequate to support a narrower claim may nonetheless be adequate to support a broader claim under section 112, paragraph 1). A determination of this issue in MSM Investments's favor would strip the Jacob Clinic activities of any prior art status. Because MSM Investments had no opportunity to litigate this potentially determinative issue in the *Foodscience* case, the Court finds that collateral estoppel cannot, and does not, apply.

The '878 patent claims are also narrower in some critical respects. The '878 patent claims recite limitations not found anywhere in the '039 patent claims, such as the term "beneficial amount." The presence of these additional limitations in the '878 patent claims raises new questions concerning the adequacy of the prior art to anticipate these claims. Because these questions may also be determinative of validity, the Court finds that collateral estoppel is inapplicable for this additional reason. These limitations were not at issue in the *Foodscience* case and thus MSM Investments had no prior opportunity to litigate these questions.

The cases cited by Carolwood in support of this motion, *Amgen, Inc. v. Genetics Institute, Inc.,* 98 F.3d 1328 (Fed.Cir.1996) and *In re Szwarc,* 50 C.C.P.A. 1571, 319 F.2d 277 (1963), are distinguishable. In both of those cases, the basis for invalidat-

ing the previously litigated claims (nonenablement) was found applicable to the unlitigated claims. *Amgen,* at 1331–32; *Szwarc,* at 1580, 319 F.2d 277. Because the differences in claim scope presented no potentially determinative issues that had not been previously litigated, the courts applied collateral estoppel. Here, as discussed above, the differences in claim scope between the '878 patent claims and the '039 patent claims are so significant as to raise potentially determinative issues that have not been previously adjudicated and preclude the application of collateral estoppel.

For these reasons, the Court declines to grant summary judgment based on collateral estoppel.

## B. Public Use Under 35 U.S.C. § 102(b)

Turning to Carolwood's substantive ground for summary judgment, Carolwood relies on section 102(b) to argue invalidity. Section 102(b) reads, in relevant part, as follows:

> A person shall be entitled to a patent unless ... the invention was ... in public use ... in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(b). In relying on section 102(b), Carolwood, as the patent challenger, bears the burden of proving by clear and convincing evidence that the requirements of this provision are met for each claim of the '878 patent. *See* 35 U.S.C. § 282.

The invocation of section 102(b), as applied to the present facts, poses three central questions: (1) do the alleged activities at the Jacob Clinic constitute a "public use" within the meaning of section 102(b); (2) do the alleged activities at the Jacob Clinic "anticipate" the '878 patent claims within the meaning of section 102; and (3) did the alleged activities at the Jacob Clinic occur more than one year prior to the date of the '878 patent application. Because the Court finds that Carolwood has met its burden of establishing the answer to all three questions in the affirmative, the Court finds, on summary judgment, that the Jacob Clinic activities constitute a public use under 35 U.S.C. § 102(b) and that these activities anticipate claims 1–8 under section 102, rendering them invalid.

### 1. The Jacob Clinic Activities Were "In Public Use"

The question of whether an invention was "in public use" is one of law based upon underlying issues of fact. *Tone Brothers, Inc. v. Sysco Corp.,* 28 F.3d 1192, 1197 n. 3 (Fed.Cir.1994). Courts must consider how the totality of the circumstances comports with the policies underlying the public use bar.[4] *Tone Brothers, Inc. v. Sysco Corp.,* 28 F.3d 1192, 1198 (Fed.Cir.1994) (listing four policies underlying public use bar). An invention is considered "in public use" within the meaning of section 102(b) when the invention is used by a person other than the inventor who is not under any limitation, restriction, or obligation of secrecy to the inventor. *In re Smith,* 714 F.2d 1127, 1134 (Fed.Cir.1983). Once the defendant has made a *prima facie* case of public use, the patent owner bears the burden of production to come forward with clear and convincing evidence to counter that showing. *Hycor Corp. v. The Schlueter Company,* 740 F.2d 1529, 1535 (Fed.Cir.1984). Such evidence may include evidence that the use was primarily experimental in nature, not commercial. *TP Laboratories, Inc., v. Professional Positioners, Inc.,* 724

---

4. The Federal Circuit recently announced that it would no longer apply a "totality of the circumstances" test in analyzing the on-sale bar, in accordance with the Supreme Court's decision in *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Because the Federal Circuit has not indicated that this departure also applies to the public use bar, this Court applies the "totality of the circumstances" test.

F.2d 965, 970–72 (Fed.Cir.1984). Once the patent owner has met its burden of production, the court must consider all of the evidence for and against public use together to determine whether, under the totality of the circumstances, the invention was "in public use," with the burden of persuasion remaining on the defendant as the patent challenger at all times. *Id.; Tone Brothers,* 28 F.3d at 1197 n. 4.

■ Based on the evidence presented, the Court finds that the Jacob Clinic activities (as those activities are described above in the Background section) were "in public use," as that term is used in section 102(b). Carolwood has made a prima facie case establishing "public use" by presenting evidence showing that Dr. Jacob treated human patients with MSM for oral ingestion; that the patients were informed about what they were being treated with; that the named inventor, Dr. Herschler, did not control the treatments; and that the patients were not under any confidentiality obligations. *See* Aman Aff., Exh. 5, 7–12. MSM Investments has not offered any evidence to negate this showing. There is no evidence to show that Dr. Jacob or any of the patients were under any confidentiality agreement with Dr. Herschler. There is also no evidence to show that Dr. Jacob's administration of MSM was experimental in nature. Thus, applying a totality of the circumstances test, the Court finds that the Jacob Clinic activities were "in public use."

Independent of the "public use" analysis set forth above, the Court finds another basis for establishing that the Jacob Clinic activities were "in public use"—collateral estoppel. In *Foodscience I,* the Vermont court made a specific finding that Dr. Jacob's administration of MSM was "not experimental" and "was public." *Foodscience I,* at 5. By finding that certain claims of the '039 patent were invalid based on the public use at the Jacob Clinic, the Federal Circuit in *Foodscience II* neces-

sarily upheld the Vermont court's "public use" finding, though it did not expressly say so. *See Garrett v. City & County of San Francisco,* 818 F.2d 1515, 1520 (9th Cir.1987) (applying collateral estoppel to issue that was necessarily implicit in prior holding); *Morris v. County of Tehama,* 795 F.2d 791, 794 (9th Cir.1986) (matters determined by necessary implication given preclusive effect). Because the issue of "public use" in this case is identical to the one litigated and decided in the *Foodscience* case and MSM Investments had a full and fair opportunity to litigate that issue in the prior case, the Court finds that the findings that the Jacob Clinic activities were in public use and not experimental in the *Foodscience* case have preclusive effect against MSM Investments in this case.

For these reasons, the Court finds that the Jacob Clinic activities were "in public use" within the meaning of section 102(b).

### 2. The Jacob Clinic Activities "Anticipate" the '878 Patent Claims

■ "Anticipation" under section 102 is a question of fact and requires the party challenging the patent to show, by clear and convincing evidence, that each and every element of the claimed invention is disclosed in a single prior art reference. *Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1235–36. The absence of a single claim element negates anticipation. *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1571 (Fed.Cir.1986).

In this case, the Court finds that no genuine issue of material fact exists as to what activities occurred at the Jacob Clinic and that those activities "anticipate" all of the '878 patent claims. Each element of the claims is met by the Jacob Clinic activities.

As for independent claims 1 and 5, the evidence shows that Dr. Jacob administered to human patients a nonzero amount of MSM that does not occur naturally in, and is in addition to, food actually eaten.

The only argument MSM Investments makes against anticipation is that the Jacob Clinic activities do not meet the claim terms "feeding" and "increasing the amount of metabolizable sulfur." MSM Investments's argument rests completely on the premise that these terms include a temporal limitation and a nutritional use limitation. Because the Court interprets claims 1 and 5 as *not* including these limitations, the Court finds no merit in MSM Investments's argument. The terms "feeding" and "increasing" are not limited temporally and do not require the performance of acts on an ongoing or habitual basis. *See* Claim Construction Order, at 9:12–11:11.

Because the nutritional use limitation was not raised or addressed in the Court's Claim Construction Order, the Court addresses this limitation herein.[5] At the hearing on this motion, MSM Investments pointed to the ordinary meaning of "feed" and the '878 patent specification as supporting a use limitation requiring nutritional, as opposed to pharmaceutical, use. According to MSM Investments, the reference to "nourishment" in the dictionary definition of "feed" indicates a nutritional purpose.[6] In addition, MSM Investments argues, the '878 patent specification teaches using MSM for nutritional purposes as a dietary supplement. The Court does not find support in either the claim language or the specification for this limitation. The term "feeding," on its face, simply does not suggest any limited purpose and certainly does not exclude giving food or supplying nourishment for pharmaceutical purposes, as MSM Investments suggests. MSM Investments's reliance on "nourishment" is completely unsupported. And, while the '878 patent specification teaches taking MSM as a dietary supplement, it also teaches taking MSM for pharmaceuti-

cal or pharmacological purposes (*see e.g.,* '878 patent, col. 13:53–14:62). Based on the claim language, the '878 patent specification, and file history, the Court interprets the term "feeding" in claim 1 as *not* limited to using MSM for nutritional purposes, as proposed by MSM Investments.

MSM Investments's reliance on the term "feeding" as supporting the nutritional use limitation is inapplicable to claim 5, which does not recite the term "feeding." The Court rejects any interpretation of the term "increasing the amount of metabolizable sulfur" as including the nutritional use limitation. There is no basis for such a limited reading of this term. MSM Investments has not pointed to any language in claim 5 that suggests a limited use or purpose that even remotely resembles the proposed nutritional use limitation.

With respect to the dependent claims, each of the elements is also met by the Jacob Clinic activities. The evidence shows that the amount dispensed was up to 4 grams per day (one-half teaspoon, twice daily). This amount literally meets the limitations of claims 2 and 6. In addition, because the patients to whom the MSM was administered were humans, the limitations of claims 3, 4, 7, and 8 are also met.

For these reasons, the Court finds that the Jacob Clinic activities meet each and every limitation of claims 1–8 of the '878 patent and therefore "anticipate" these claims.

### 3. The Jacob Clinic Activities Occurred More than One Year Before the Effective Filing Date of the '878 Patent

 Whether the Jacob Clinic activities even qualify as prior art against the '878

---

5. MSM Investments argued that the term "feeding" includes a nutritional use limitation for the first time *after* the Court issued its Claim Construction Order.

6. The parties previously agreed that the ordinary meaning of "feed" is "to give food to; to supply nourishment." *See* Claim Construction Order.

patent under section 102(b) depends on the effective filing date of the '878 patent. Prior art status attaches to these activities by operation of section 102(b) only as to those claims of the '878 patent for which the effective filing date is predated by more than one year. *See* 35 U.S.C. § 102(b). Defendant Carolwood contends that the effective filing date of the '878 patent is at least as early as September 14, 1982, the filing date of the '421 patent.[7] Motion, at 6:22–23. MSM Investments argues that the '878 patent is entitled to an even earlier effective filing date, August 6, 1979, based on the '130 patent. Opposition, at 15:9–19. According to MSM Investments, if the Court interprets the '878 patent claims broadly and finds that they are not limited to the nutritional use of MSM (which the Court has), the '878 patent claims are entitled to priority to the filing date of the '130 patent. If MSM Investments is correct about the effective filing date, then the Jacob Clinic activities which occurred in 1981 do not sufficiently predate, and therefore do not qualify as prior art against, the '878 patent claims under section 102(b).

The '878 patent claims may rely on the '130 patent for an effective filing date if, and only if, the requirements of section 120 have been met.[8] The parties dispute compliance of only one of these requirements—the disclosure requirement of section 112, paragraph 1. Before a later-filed

application may benefit from the filing date of the earlier-filed application, the disclosure of the earlier-filed application must satisfy all of the requirements of section 112, paragraph 1, including the written description requirement, to support the claims of the later-filed application.[9] Carolwood argues that the '130 patent does not satisfy the written description requirement, while MSM Investments argues that, under a broad reading of the claims, the '130 patent does.

The question of whether a priority document contains sufficient disclosure under section 112, paragraph 1 is a question of *law,* but compliance with the written description aspect of that requirement is a question of *fact. Utter v. Hiraga,* 845 F.2d 993, 998 (Fed.Cir.1988). As defined by the Federal Circuit, "[t]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *Ralston Purina Company, v. Far–Mar–Co, Inc.,* 772 F.2d 1570, 1575 (Fed. Cir.1985) (citation and quotation omitted). Support in the parent application must be based on disclosures, and not obvious variants of the disclosures. *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1571–72 (Fed.Cir.1997). A claim acquires the earlier filing date of the parent application if, and only if, the claim could have

---

7. *See* table of serial patent applications, *supra,* p. 1047.

8. Section 120 reads as follows:

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of

the first application and if it contains or is amended to contain a specific reference to the earlier filed application.
35 U.S.C. § 120.

9. Section 112, paragraph 1, reads as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
35 U.S.C. § 112, ¶ 1.

been added to the parent application without introducing new matter. *Studiengesellschaft Kohle, M.B.H., v. Shell Oil Co.,* 112 F.3d 1561, 1564 (Fed.Cir.1997). The court must assess each claim separately, with all claim limitations appearing in the supporting disclosure. *Id.; Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1567 (Fed. Cir.1991).

Applying these standards, the Court considers whether the '130 patent contains a written description sufficient under 35 U.S.C. § 112, ¶ 1, to support any of the '878 patent claims. Both independent claims of the '878 patent (i.e., claims 1 and 5) employ the term "beneficial amount." In interpreting this term in the Claim Construction Order, the Court relied heavily on teachings in the '878 patent specification, rather than the claim language, to explain what a "beneficial amount" means. The Court finds, however, that the '130 patent contains no teachings supporting the term "beneficial amount" and that the complete absence of such teachings makes the '130 patent specification inadequate under 35 U.S.C. § 112, ¶ 1, as a matter of law, to support claims 1 and 5. As discussed above, only three passages of the '130 patent refer to administering MSM orally. The first reference (col.2:41–47) contains only a general teaching that MSM can be administered orally in different ways. The second reference (col.4:10–12) teaches a benefit associated with orally ingested MSM (i.e., "to preserve the pliancy of intestinal and other tissue"). The third reference (col.11:50–61) teaches that MSM orally ingested by rats in the amount of 20 grams per kilogram of body weight per day did not cause adverse reactions. None of these references, under any reasonable interpretation, suggests what constitutes a "beneficial amount" of MSM, much less conveys that the inventor was in possession of an invention employing a "beneficial amount" of MSM at the time that the '130 patent was filed. Dependent claims 2–4 and 6–8

incorporate this term as a limitation and therefore the '130 patent specification is inadequate to support these claims as well. Accordingly, none of the '878 patent claims is entitled to benefit from the '130 patent to establish an effective filing date of August 6, 1979.

Besides the "beneficial amount" limitation, the claims contain other limitations that are also unsupported by the '130 patent specification. Claim 2 recites that the amount of MSM provided for ingestion is at least 100 milligrams, and claim 6 recites that the amount is at least 100 mg daily. Claim 5 recites increasing the amount of metabolizable sulfur defined by providing MSM for ingestion. The Court finds, as a matter of law, that the '130 patent contains no disclosures adequate to support these claim recitations under 35 U.S.C. § 112, ¶ 1 and, for these additional reasons, cannot serve as a basis to establish an effective filing date for claims 2, 5, and 6.

Since the '130 patent does not contain a written description adequate to support the '878 patent claims under 35 U.S.C. § 112, ¶ 1, the Court finds that none of the '878 patent claims are entitled to an effective filing date based on the '130 patent and that the earliest effective filing date to which the '878 patent claims are entitled is September 14, 1982. Thus, the critical date for the '878 patent claims (i.e., the date before which the section 102(b) bar applies) is September 14, 1981 (one year before the filing date of the '421 patent).

There is no genuine dispute that the Jacob Clinic activities took place before September 14, 1981. Carolwood has presented evidence showing that the activities relied upon took place during a period at least as early as February, 1981 through September 14, 1981. Because these activities predate the critical date of the '878 patent, the Jacob Clinic activities acquire prior art status under 35 U.S.C. § 102(b) against the '878 patent.

## V. CONCLUSION

Because the Court finds that the Jacob Clinic activities were "in public use," "anticipate" claims 1–8 of the '878 patent, and qualify as section 102(b) prior art against the '878 patent, the Court finds that claims 1–8 of the '878 patent are invalid under 35 U.S.C. § 102(b) as anticipated by the Jacob Clinic activities. Accordingly, the Court GRANTS Carolwood's motion for summary judgment for invalidity.

IT IS SO ORDERED.