**LOUISVILLE BEDDING CO., Plaintiff,**

v.

**PERFECT FIT INDUSTRIES, INC., Defendant.**

**No. CIV.A.98–560.**

United States District Court,
W.D. Kentucky,
Louisville Division.

July 10, 2001.

Janet P. Jakubowicz, Greenebaum Doll & McDonald, Louisville, KY, Hartwell P. Morse, III, Kara E.F. Cenar, Walter J. Kawula, Jr., Thomas L. Gemmell, Michele S. Katz, Welsh & Katz, Chicago, IL, for plaintiff.

James R. Higgins, Jr., James R. Robinson, Middleton & Reutlinger, Louisville, KY, Colleen M. Coyle, Akin, Gump, Strauss, Hauer & Feld, Washington, DC,

Joel S. Goldhammer, Andrea T. Vavoneses, Jeffrey K. Sherwood, Kevin R. Hamel, Akin, Gump, Strauss, Hauer & Feld, Philadelphia, PA, for defendant.

## MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the court upon the plaintiff's motion (Record No. 192) for summary judgment on the defendant's seventh affirmative defense, collateral estoppel. In the current action, Louisville Bedding Company ("Louisville Bedding") sued the defendant, Perfect Fit Industries, Inc. ("Perfect Fit") for infringement of United States Patent No. 5,249,322 ("the '322 patent"). Perfect Fit requested that this court apply the doctrine of issue preclusion, or collateral estoppel, to prevent Louisville Bedding from re-litigating any interpretation of claims 1, 11, 28, and 34 of the '322 patent, as those claims were construed by Judge Charles R. Simpson in a previous action, in this forum, between the plaintiff and Pillowtex Corporation ("Pillowtex").[1] Following an oral hearing on June 19, 2001, this court issued its ruling denying the plaintiff's motion and according Judge Simpson's prior claim interpretation full preclusive effect. This memorandum opinion explains the court's ruling.

### Analysis

■ A four-element framework finds issue preclusion appropriate if: (1) the disputed issue is identical to that in the previous action, (2) the issue was actually litigated in the previous action, (3) resolution of the issue was necessary to support a final judgment in the prior action, and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior pro-

1. Louisville Bedding Co. v. Pillowtex Corp., United States District Court for the Western District of Kentucky, Louisville Division, Civil Action No. C–94–0722–L–S ("the Pillowtex litigation").

ceeding. *See Graco Children's Products, Inc. v. Regalo International, LLC,* 77 F.Supp.2d 660, 662 (E.D.Pa.1999). Moreover, as the parties conceded at the hearing, three cases, *TM Patents v. IBM,* 72 F.Supp.2d 370 (S.D.N.Y.1999), *Graco Children's Products, supra,* and *Abbott Laboratories v. Dey,* 110 F.Supp.2d 667 (N.D.Ill.2000), are squarely on point and controlling.

### Identity of Issues

■ In his memorandum opinion in the *Pillowtex* litigation, Judge Simpson construed two phrases with regard to the claims of the '322 patent, which construction Perfect Fit seeks to prevent Louisville Bedding from re-litigating. The first is the phrase "elastic material attached to inelastic material in a plurality of spaced apart parallel lines of attachment," which appears in Claims 1, 11, and 28. Judge Simpson construed this phrase to require that the fitted mattress cover must have embodied in its skirt a configuration of spaced apart, parallel lines of attached elastic material; that is, that the elastic material *itself* must be configured in spaced apart, parallel lines of attachment. This interpretation, which Perfect Fit seeks to employ, was made over the contentions of Louisville Bedding that the elastic material need not have any particular configuration, an argument they maintain in this litigation.

The second phrase Judge Simpson construed appears in Claim 34, with the language "rows of elongated elastic cords extending in a longitudinal direction of the skirt...." Judge Simpson construed this phrase to mean that the fitted mattress cover must have embodied in it a plurality of elastic cords incorporated into the skirt material in rows. He rejected Louisville Bedding's contentions that the rows could extend in "more or less a straight line" (finding instead that "extending in a longitudinal direction of the skirt" limited the rows to straight lines), and that "rows" could mean "rows of stitches" (finding that the claim specifically described the configuration of the elongated elastic cords which are incorporated into a material).

These same phrases and claims are at issue in the current litigation. Therefore, the element of identity of issues is met. The plaintiff's reliance on *MSM Inv. Co. v. Carolwood Corp.,* 70 F.Supp.2d 1044 (N.D.Cal.1999), is misplaced. The plaintiff cited *MSM* for the proposition that "new issues" presented by current litigation render application of collateral estoppel inappropriate. That case, however, concerned the attempt to apply a previous ruling that one patent was invalid to *a different patent,* which was alleged to be the same or broader in scope to the invalid patent. To take this reasoning out of context and apply it to the claim interpretation at issue here is tantamount to arguing that every new, allegedly infringing product warrants new claim interpretation of the same patent. This result clearly contradicts the purpose of *Markman.*

### Actually Litigated

It appears that the disputed issue here was actually litigated in the previous action. The issue of claim interpretation arose when the defendant Pillowtex filed a motion for partial summary judgment, seeking a determination that two of its mattress pads did not infringe the '322 patent. The issue was briefed and argued before Magistrate Judge James D. Moyer, who issued a report making recommendations. Louisville Bedding filed written objections to which Pillowtex responded. Judge Simpson adopted in part and rejected in part Magistrate Judge Moyer's recommendations and issued a memorandum opinion which set out his construction of the claims and his determination that the remaining mattress pad (the parties having stipulated that the other one was non-

infringing) did not infringe the patent in light of this construction. After the issuance of this memorandum opinion, the parties requested clarification; Judge Simpson accommodated their request and issued a clarifying opinion. The parties then settled and jointly moved the court to make its memorandum opinion and clarifying opinion a final and non-appealable judgment, dismissing with prejudice all remaining claims. Thus, this judgment was made final by agreement of the parties; this agreement, however, does not render the *imposed* judgment a *consent* judgment, as the plaintiff has argued.

■ Louisville Bedding's arguments denying that the disputed issue here was actually litigated in the previous action are not persuasive. It contends that Judge Simpson, in limiting his analysis to the disputed claims (1, 11, 28, and 34—all independent claims), did not consider the effect of dependent claims and thus violated the doctrine of claim differentiation (by construing the independent claims in such a way as to make the dependent claims superfluous). This argument goes to the merits of Judge Simpson's conclusions, not to the question of whether the issue was actually litigated. It is not for this court to judge the correctness of a previous judge's claim interpretation in determining its preclusive effect. *See Abbott Laboratories*, 110 F.Supp.2d at 672. Moreover, the plaintiff's citation of the "pragmatic approach" taken in patent invalidity cases such as *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132 (Fed.Cir.1985), and *MSM Inv. Co. v. Carolwood Corp.*, 70 F.Supp.2d 1044 (N.D.Cal.1999), is inapplicable here. Once again, the plaintiff attempts to argue that the "unadjudicated" dependent claims here give rise to new issues which preclude collateral estoppel; this is merely a re-hash of its criticism of Judge Simpson's rulings regarding claim construction. This criticism goes to the merits, not the process. Perfect Fit has met its burden of showing that the disputed issue here was actually litigated in the *Pillowtex* action.

*Necessary to Final Judgment*

That Judge Simpson's interpretation of the claims language at issue here was necessary to the final judgment in the previous action is clear from his memorandum opinion. He wrote:

We have determined that with respect to Claims 1, 11, and 28, the fitted mattress cover must have embodied in its skirt a configuration of spaced apart, parallel lines of attached elastic material.... The elastic material in the skirt of the Pillowtex product does not have elastic material which is configured in spaced apart, parallel lines. Rather, the Xymid® fabric contains interconnecting loops of elastic material woven into a fibrous base material resulting in a composite fabric which has a honeycomb-type appearance.... In order to find literal infringement, each and every element of a claim of the '322 patent must exist in the alleged infringing product. We conclude that the #4059 mattress cover does not literally infringe Claims 1, 11 or 28. We must also conclude that dependent claims 2, 4, 8, 10, 12, 13, 16, and 18 are not literally infringed by the #4059 mattress cover manufactured and sold by Pillowtex.

We have determined that with respect to Claim 34, the fitted mattress cover must have embodied in it a plurality of elastic cords incorporated into the skirt material in rows.

The #4059 mattress cover does not utilize a skirt material which has incorporated into it a plurality of rows of elastic cords. The Lycra® yarns which represent the only possible material to constitute "elastic cords" in the #4059 skirt material are woven into the fibrous

base material in an interconnecting pattern of loops which travel in all directions throughout the material. . . .

Since a finding of literal infringement requires that each and every element of a claim of the '322 patent exist in the product, we conclude that there is no literal infringement of Claim 34. We must also conclude that dependent claims 35, 36, 37, 41, and 42 are not literally infringed by the #4059 mattress cover.

Thus, Judge Simpson's interpretation of the language in the disputed claims led directly to his judgment that the #4059 mattress pad was non-infringing. Louisville Bedding's various arguments denying that the claim construction was necessary to the outcome and that there was a final judgment, which focus on its favorable settlement with Pillowtex (whereby Pillowtex ultimately took a license for the non-infringing #4059 pad under the '322 patent) are unavailing. The "judgment" here was the Judge's determination of non-infringement, a conclusion which emanated from his construction of the claim language and the application of that construction to the facts at hand. This judgment was made final, by joint motion of the parties, after settlement of the case.

*Full and Fair Opportunity to Litigate*

■ Louisville Bedding relies heavily on its arguments in relation to this prong, which was the basis of the *Graco* court's denying the preclusive effect of an earlier claim interpretation. Both parties recognize that analysis of this element also requires consideration of the incentive to litigate; that is, the incentive of the party against whom estoppel is sought to have litigated the unfavorable claim interpretation in the previous action. In *Graco*, this

element was not present because while Graco lost on a claim interpretation issue, it won on its claim of patent infringement (the jury returned a favorable verdict under the doctrine of equivalents). *See Graco*, 77 F.Supp.2d at 664. Moreover, the outcome in *Graco* demonstrated that the unfavorable claim interpretation was not necessary to the final judgment, as the patent was nevertheless found to have been infringed. *See id.* *Graco*, however, is inapplicable to the circumstances of this case, where the plaintiff lost on *both* the interpretation issue and on the ultimate issue of infringement. Louisville Bedding's contention that it actually *won* on the issue of infringement because the non-infringing Pillowtex product was licensed under the '322 patent after settlement has no basis in case law. The record reflects the unfavorable judgments regarding claim interpretation and infringement, which were subsequently clarified upon motion of the parties, and made final after settlement.[2] If anything, the settlement underscores the preclusive effect of Judge Simpson's rulings, as it cemented them and made them non-appealable. To go outside the record and apply *Graco*'s reasoning to the circumstances in this case would violate the purpose behind *Markman*, which even *Graco* acknowledged: "There is no question that, by instructing courts to decide issues of claim construction in patent cases, the Court in *Markman* recognized the importance of uniformity in the treatment of a given patent." *Id.* at 663. In spite of this purpose, the circumstances in *Graco* required that issue preclusion not apply. Those circumstances are not present in this case, however, and preclusion is appropriate.

---

**2.** This court agrees with *TM Patents* ' reasoning that "[a] party who cuts off his right to review by settling a disputed matter cannot complain that the question was never reviewed on appeal. The Markman rulings were not vacated as part of the settlement. They therefore remain preclusive." *TM Patents*, 72 F.Supp.2d, at 378.

*Conclusion*

Thus, the four-element framework indicates that collateral estoppel is warranted in this case. The parties made additional arguments outside this framework, however, which need to be addressed. The first is Louisville Bedding's contention that it had no notice that its decision to make the *Pillowtex* judgment final would be accorded preclusive effect. This argument is answered by *TM Patents*, which acknowledged that while its particular facts presented a case of first impression, "[e]ven prior to Markman, the Federal Circuit had held that determination of the scope of a patent claim in a prior infringement action could have collateral estoppel effect against the patentee in a subsequent case." *TM Patents*, 72 F.Supp.2d at 377 (citing *Pfaff v. Wells Elec. Inc.*, 5 F.3d 514, 517–18 (Fed.Cir.1993)). Moreover, it is not insignificant that Louisville Bedding elected to pursue this action in the very same forum in which the *Pillowtex* litigation had occurred.

 Additionally, it is important to dispel the notion that something akin to an evidentiary hearing must have been held in order for a prior judgment to be accorded preclusive effect. Running throughout the case law is not the notion of an evidentiary hearing, but rather the singular finality of a *Markman* ruling. The case law does not prescribe any particular form for that ruling to take; certainly, if there are no disputes of fact, it can come, as in any case, after a motion for summary judgment. Extrinsic evidence is not examined unless there is some ambiguity; first, the court looks to the claim language, the specification, and the prosecution history. There is no talismanic effect to an evidentiary hearing; indeed, it appears that there was no such hearing in *Abbott Laboratories*, nor did the court rely on such a hearing in that case. The application of collateral estoppel is an issue to be deter-mined on a case-by-case basis. This court has applied the law regarding issue preclusion to the circumstances of this case and finds it appropriate. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for partial summary judgment on the defendant's seventh affirmative defense, collateral estoppel, is **DENIED.** The prior claim interpretations of Judge Simpson in the *Pillowtex* litigation will be given full preclusive effect, and will not be re-litigated in this case.